[No. 2207]

## BOARD OF COUNTY COMMISSIONERS OF NYE COUNTY, APPELLANT, *v.* HENRY SCHMIDT AND RUSSELL WILLIAMS, COPARTNERS DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF THE TONOPAH HARDWARE COMPANY, RESPONDENT.

[157 Pac. 1073]

1. LICENSES—POWER TO LICENSE OR TAX—STATUTE—"UNINCORPORATED TOWNS."

The proviso to Stats. 1881, c. 48, added by Stats. 1889, c. 43, reading that in all unincorporated cities and towns the board of county commissioners shall have power to fix and collect a tax upon certain businesses and amusements, and none other, does not apply to towns which established their form of government after the unincorporated town act (Stats. 1879, c. 98), had been repealed by Stats. 1887, c. 43, or to towns which, by reason of their having a voting population of 600 or more, *ipso facto* come under the general town government act, the term "unincorporated towns" not referring to all towns within the state not incorporated; as to give it such an interpretation would nullify the grant by the legislature in the body of the act of power to boards of county commissioners to levy and collect a license tax upon numerous specific businesses, but referring specifically to towns which have assumed a form of town government under the act of 1879 entitled "An act to provide for the government of unincorporated towns in this state."

2. STATUTES—CONSTRUCTION.

In construing a statute the court must avoid an interpretation which will result in absurd consequences.

3. STATUTES—CONSTRUCTION.

Legislative acts should be construed so as to make all parts thereof harmonious, if a reasonable construction can accomplish the result.

4. STATUTES—CONSTRUCTION.

Where the legislative body manifests a definite purpose in an act, it will be presumed that in furtherance of such purpose the lawmaking power formulated the subsidiary provisions in harmony therewith.

5. STATUTES—CONSTRUCTION.

It will not be assumed that one part of a legislative act will make inoperative or nullify another part of the same act, if a different and more reasonable construction can be applied.

6. STATUTES—CONSTRUCTION.

In construing statutes courts must presume a legislative intendment of reasonable operation of all parts of the act.

APPEAL from the Fifth Judicial District Court, Nye County; *Mark R. Averill,* Judge.

Action by the Board of Commissioners of Nye County, acting for the use and benefit of the inhabitants of the town of Tonopah, against Henry Schmidt and another, copartners doing business under the firm name and style of The Tonopah Hardware Company. From a judgment and order for defendants, plaintiff appeals. Judgment and order **reversed,** and cause remanded, with instructions that judgment be entered for plaintiff. [Petition for rehearing pending.]

*J. A. Sanders,* District Attorney of Nye County, and *E. P. Carville,* District Attorney of Elko County, for Appellant:

Statutes are to be construed, if possible, so as to give effect to every word, clause, and sentence.

In construing the statutes, reference may properly be had to extrinsic facts and circumstances, such as legislation on the subject, both prior to and contemporaneous with that in question, general facts within knowledge at the time of the legislative enactment, and also the result that would follow the different probable constructions of the act in question; also the construction given the act by those trades and occupations affected, as well as to the length of time of the acquiescence of such trades and occupations in the construction given the act by those whose duty it was to enforce it.

In the interpretation of a statute, the meaning on a view of the enacting clause, saving clause, and proviso, taken and construed together, is to prevail. If the principal object of the act can be accomplished and stand, under the restriction of the saving clause or proviso, the same is not to be held void for repugnancy. The proviso, if it can be termed a proviso in the sense of a legislative enactment, and the body of the act are in conflict with each other, There is an irreconcilable repugnancy between the two. It is impossible to give effect to both the body of the act and the proviso. Where a proviso in an act is inconsistent with the purview, the latter must prevail. (*Penick* v. *High Shoals Mfg. Co.,* 38 S. E. 973; 1 Blackstone, 195; Sedgwick, St. and Const. Law, 47.)

*Wm. Forman,* for Respondent:

The appeal is without merit, and the judgment and decision of the lower court should be affirmed.

The power of the county commissioners to collect licenses is limited to the kinds of business enumerated in the proviso added to subdivision 9 of section 1 of "An act providing for the government of cities and towns in this state," and the act amendatory thereto. (Stats. 1881, p. 68; Stats. 1889, p. 43; *Griswold* v. *Board of County Commissioners,* 23 Nev. 183.)

The Griswold case was decided in 1896. In 1903 the legislature recognized and accepted the construction placed upon the act by the supreme court, and amended the provision by adding thereto certain businesses. (Stats. 1903, p. 57; Rev. Laws, 877.) Some of the businesses added were already a part of subdivision 9, but not in the proviso as it stood prior to the amendment. The legislature having adopted and ratified the construction placed upon the statute in the Griswold case, and the business engaged in by respondent not being among those which the board of county commissioners is given authority to license, the lower court properly held void the ordinance in question, in so far as it requires a license of respondent.

By the Court, McCarran, J.:

This action involves the imposition of a license tax upon the business of respondent, to wit, retail hardware, in the town of Tonopah, Nye County, Nevada. The appellant herein, the board of county commissioners of Nye County, acting as a board of town commissioners for the town of Tonopah, brought suit to collect a license tax on the business conducted by respondent, under an act of the legislature of 1881 entitled "An act providing for the government of the towns and cities of this state." Subdivision 9 of section 1 of the act as originally passed in 1881 invested the board of county commissioners, sitting as a board of town commissioners, with powers as follows:

"To fix and collect a license tax on, and regulate all places of business and amusement so licensed, as follows, to wit: Artisans, artists, assayers, auctioneers, bakers, bankers, barbers, billiard tables, boilermakers, boot and shoemakers and cobblers, bowling alleys, brokers, factors and general agents, commission merchants, circus, caravan or menagerie, concerts and other exhibitions, dance houses, saloons or cellars, express and freight companies, foundries, gaming, hawkers and peddlers, hay yards, wagon yards and corrals, hotels, boarding houses and lodging houses, illuminating gas, electric light, insurance agents, job wagons, carts and drays, laundries, livery and sale stables, lumber yards, manufacturers of liquors and other beverages, manufacturers of soap, soda, borax or glue, markets, merchants and traders, milliners and dressmakers, newspaper publishers, pawnbrokers, restaurants and refreshment saloons, barrooms, shooting galleries, skating rinks, solicitors, drummers, mercantile agents, stages and omnibuses, stockbrokers, tailors, clothes cleaners, telegraph companies, theaters, melodeons, undertakers, wood and coal dealers, having due regard to the amount of business done by each person or firm so licensed; to license, tax and regulate, prohibit and suppress all tippling houses, dram shops, public card tables, raffles, hawkers, peddlers, and pawnbrokers, gambling houses, disorderly houses, and houses of ill fame; to levy and collect an annual tax on all dogs owned or kept within the limits of said town or city, and to provide for the extermination of all dogs for which such tax shall not have been paid, and to prohibit the keeping of hogs or the running at large of goats, cows or other animals within the limits of said town or city; to fix and collect a license tax upon all professions, trades or business within said town or city not heretofore specified." (Stats. 1881, p. 69.)

The legislature of 1889 amended this section by adding thereto a proviso as follows:

"*Provided,* that in all unincorporated cities and towns in this state the boards of county commissioners shall

have power to fix and collect a tax upon the following places of business and amusements, and none other, as follows, to wit: Circus, caravan or menagerie, concerts, theatrical performances, melodeons and other exhibitions, dance houses, wholesale liquor merchants, brewers, manufacturers of liquors and beer, saloons, bars, barrooms or cellars, gaming and gambling houses, hawkers and peddlers, junk shops, pawnbrokers, auctioneers, solicitors, drummers and mercantile agents; to levy and collect an annual tax on all dogs owned or kept within the limits of said town or city, and to provide for the extermination of all dogs for which tax shall not have been paid, and to prohibit the keeping of hogs or the running at large of goats, cows, or other animals within the limits of said town or city; to fix and collect a license tax upon all professions, trades, or business within said town or city not heretofore specified." (Stats. 1889, p. 45.)

The legislature of this state, in its efforts to assist communities in establishing and maintaining a form of organized government suitable to conditions, has from time to time enacted statutes for that purpose. It might be said that four classes of town government have been created within our state by our several legislative acts (we use the word "classes" here, not in its strict sense, but for the purpose of exemplification only) :

First—That class which by legislative enactment was permitted to petition the board of county commissioners for the application of the town government act, such petition being required to be signed by a majority of the voting population, representing three-fifths of the taxable property. (Stats. 1873, 1879, 1881.)

Second—Unincorporated towns, securing town government by a petition of a majority of the taxpayers representing a majority of the taxable property. (Stats. 1879, p. 103.)

Third—Disincorporated towns, *ipso facto* coming within the provisions of the statute of 1881. (Stats. 1881, p. 78, sec. 16.)

Fourth—Towns having a voting population of 600 or more, *ipso facto* coming under the provisions of the statute of 1881 as amended in 1887. (Stats. 1881, as amended by Stats. 1887, p. 117.)

By referring to the Statutes of 1879 we find that the term "unincorporated towns" was first mentioned; and the avenue by which this class of towns could secure town government was by a petition signed by a majority of the taxpayers, representing a majority of the taxable property.

The legislature of 1881, when it enacted the statute entitled "An act providing for the government of towns and cities of this state," sought, as we view it, to repeal the statute of 1879 applying to unincorporated towns, save and except in so far as such act might have been taken advantage of prior to the approval of the act of 1881. In this respect it will be noted that section 17 of the act of 1881 provides:

"An act entitled 'An act providing for the government of the towns and cities of this state,' approved February twenty-first, eighteen hundred and seventy-three, and all other acts and parts of acts in conflict with the provisions of this act, are hereby repealed; *provided,* that any town which has availed itself of the provisions of an act entitled 'An act to provide for the government of unincorporated towns in this state,' approved March eighth, eighteen hundred and seventy-nine, and elects to remain under the provisions thereof, may continue its government thereunder, and the provisions of said act, in respect to such town, shall remain in full force." (Stats. 1881, p. 78.)

From this section we deem it reasonable to assume that prior to the approval of the act of 1881 certain towns had taken advantage of the provisions of the act of 1879, which act created what we have styled here government for unincorporated towns within this state. In 1887 the legislature passed an act which in specific terms provided:

"An act entitled 'An act to provide for the government

of unincorporated town in this state,' approved March 8, 1879, is hereby repealed." (Stats. 1887, p. 51.)

Here was a specific repeal of the act of 1879 creating the unincorporated town government. If any towns had taken advantage of the act of 1879—and we must reasonably infer, in view of the repealing clause of the act of 1881, that there were at least some towns which had taken advantage thereof—these towns were, by the specific repealing act of 1887, left without any form of town government, except in so far as other acts might affect them.

In 1889 our legislature, looking toward the class of towns which had taken their government from the unincorporated town act of 1879, amended the general town government act, as then in existence, by adding the proviso to subdivision 9 of section 1, which proviso was intended by the legislature to apply to that class of towns known as unincorporated towns, government for which had been provided by the act of 1879, and which latter act had been specifically repealed in 1887.

The trial court found, and its finding in this respect is not questioned here, that the town of Tonopah assumed its government by reason of its having a voting population of 600 or more. This being true, it takes its form of government from the general town government act as enacted in 1881, and as amended in 1887, 1889, and 1903.

1. As we view it, the proviso added by way of amendment to subdivision 9 of section 1 of the act of 1881, applying, as it does, specifically to that class of towns which adopted their town government under the unincorporated town act of 1879, could not apply to towns which established their form of government after the unincorporated town act of 1879 had been repealed by the act of 1887. The proviso found in subdivision 9 of section 1 of the act of 1881 does not apply to towns which by reason of their having a voting population of 600 or more *ipso facto* come under the general town government act.

It is the contention of respondents here, and indeed their contention in this respect found favor in the court below, that the term "unincorporated towns," as found in the proviso in subdivision 9 of section 1, refers to all towns in the state not incorporated. If this were true, the proviso "that in all unincorporated cities and towns in this state the boards of county commissioners shall have power to fix and collect a tax upon the following places of business and amusement, and none other," would defeat the spirit and intent of the first part of the subdivision, that which precedes the proviso, and which confers upon the board of county commissioners the power to fix and collect a license tax upon all places of business and amusement enumerated therein.

2. A common rule of statutory construction requires the court to avoid interpretation that will result in absurd consequences. It will be seen at a glance that the term "unincorporated towns," if given the meaning and significance contended for by respondent, would include all the other three classes of towns created by the several acts of the legislature to which we have referred, and thus the first part of subdivision 9 preceding the proviso would be nullified by that which followed the proviso, and which was added by way of amendment. This, we think, would create a most absurd situation, and one which we deem unwarranted in the light of legislation enacted upon the subject, reference to which we have made.

3. Legislative acts should be construed so as to make all parts thereof harmonious, if a reasonable construction can accomplish this result. (Lewis's Sutherland, Stat. Const., vol. 1, p. 708.)

4. Viewing the several acts of the legislature upon the subject of town government, we find a definite purpose carried out in each of the several acts. One definite object sought to be accomplished by the legislature in the enactment of the general town government act of 1881 was to confer upon the board of county commissioners powers to levy license tax, having in view the

fact that such was necessary to the institution and maintenance of such a government. Where the legislative body manifests a definite purpose, it will be presumed that, in furtherance of this definite purpose, the lawmaking power formulated the subsidiary provisions in harmony therewith. It would, we think, do violence to this principle to say that the legislature of this state, after having conferred the power to levy and collect license tax upon numerous specific businesses, would, in the same act, and, indeed, in the same section, nullify the intendment which it sought to carry out.

5. It will not be assumed that one part of a legislative act will make inoperative or nullify another part of the same act, if a different and more reasonable construction can be applied. (Lewis's Sutherland, Stat. Const., vol. 2, p. 732.)

6. As well stated by the author of the work last cited:

"The law will not allow a revocation or alteration of a statute by construction when the . words may have their proper construction without it."

Courts in construing statutes must presume a legislative intendment of reasonable operation of all parts of the statute.

Following these simple canons of construction, we are thereby precluded from the idea that when the legislature enacted the proviso to subdivision 9 of section 1 it intended to do an absurd thing, namely, to nullify the broader provisions of the section which precede it.

We note that neither in the proceedings in the court below nor in the written opinion filed by the learned judge of that court is any reference made to the specific repealing act of 1887, which act repealed the unincorporated town government act of 1879. This act is neither indexed in the Statutes of 1887 nor is it carried forward into the Revised Laws of 1912. We assume that its existence was not brought to the attention of the trial court, and, indeed, it might have been easily

overlooked. We think its existence, however, clarifies the situation so as to make it manifest that the provisions of the act repealed could not apply to the government of the town of Tonopah; the latter having come into existence many years thereafter.

The term "unincorporated towns" was one created by legislative enactment. It was a term intended to apply to the establishment of town government for certain communities which, acting under the provisions of the statute of 1879, petitioned the board of county commissioners that the act might become operative. In our judgment, it is clear that the term "unincorporated towns," as used in the proviso to subdivision 9 of section 1, referred specifically to those towns which had assumed a form of town government under the act of 1879 entitled "An act to provide for the government of unincorporated towns in this state."

The limitation established by the proviso to subdivision 9 of section 1 does not apply to the town in which respondent's business is conducted. By virtue of that part of subdivision 9 of section 1 which does apply to the town of Tonopah by reason of the class in which that town belongs, authority is conferred to impose a license tax upon the class of business conducted by respondent.

The judgment and order appealed from are reversed and the cause remanded with instructions that judgment be entered for plaintiff.

It is so ordered.

[Petition for rehearing pending.]