State ex rel. Administrators Tulane Education Fund vs. Board of Assessors.

## No. 8889.

### THE STATE OF LOUISIANA EX REL. THE BOARD OF ADMINISTRATORS OF THE TULANE EDUCATION FUND VS. THE BOARD OF ASSESSORS.

Exemptions from taxation are always strictly construed against the exemption. Nothing can be supplied by intendment or inference.

The exemption of buildings and property used exclusively for colleges, or other school purposes, means such buildings as are used for the habitation of a college or school, and such property as is used in and for college or school purposes, such as chemical or philosophical apparatus, and such like.

Neither buildings, nor property of any kind, that is used for revenue or profit, although the revenue is to be applied wholly to the support of a college or school, and the profit is to be expended solely for its benefit, is exempt from taxation under our present Constitution.

APPEAL from the Civil District Court for the Parish of Orleans. Rightor, J.

*J. McConnell, E. D. White* and *E. H. Farrar* for Relators and Appellees :

1. The prejudice resulting from numerous decisions under Article 118 of the Constitution of 1868 must be removed before the new and widely different provisions of Article 207 of the Constitution of 1879 can be fairly considered or interpreted.
2. The exemption asked for maintained under the terms of Article 207 :
   (a) Deductions from comparison of Article 207 with Article 118.
   (b) Similar comparison of Article 207 with the corresponding Article in the Constitution of Georgia, from which it was taken with modifications.
   (c) Both comparisons demonstrate that the changes were intended to enlarge the scope of exemption, favorable to educational purposes.
3. Under the proviso to Article 207, property exempted from taxation for educational purposes may be leased, provided the benefit thereof shall accrue, not to private or corporate purposes, but exclusively for the educational purposes intended to be fostered by the Constitution.
4. The right to exemption of this property, established from a consideration of the status of the institution claiming the exemption, and holding the property as *quasi* public property, to be first administered and then distributed for educational purposes only.
5. Considerations stated, as showing why the exemption, if accorded in this case, cannot be invoked as a precedent by others.
6. Principles stated, upon which, if the issue is fairly doubtful, the exemption now prayed for should be granted in the public interest.

*T. J Semmes* and *Randall L. Gibson* on the same side.

*Chas. F. Buck,* City Attorney, for Respondents and Appellants :

1. Under the Constitution of 1879 all property, of every description whatever, is subject to taxation, unless it falls clearly within the terms of some one of the specified exemptions.
2. Art. 207, of the Constitution of 1879, granting certain exemptions, must be interpreted according to the plain, literal and ordinarily accepted meaning of the words employed.
3. When the meaning conveyed by the literal import of the words used is clear and unambiguous, the courts can do nothing but enforce the intention which the law-maker expressed. Sedgwick on the construction of Statutory and Constitutional Law, pp. 194, 195, 205, 206, 207—authorities examined; Potter's Dwarris, p. 286—authorities examined.

4. In matters of claim, for exemption, the rules of strict construction apply, under which the doubt must be given in favor of the sovereign. 93 U. S. 567.

5. Nor are these rules to be relaxed in favor of charitable or educational institutions.

6. Applying these rules to Art. 207, Constitution 1879, it must be held, under the proviso, which is in these words: "Provided, the property so exempted be not used or leased for purposes of private or corporate profit or income"—that the property of religious, charitable or educational institutions, which is leased for revenue, without regard to the use made of such revenue, is excepted from the exemption accorded to such institutions, and when so leased is subject to taxation.

7. The words "all buildings and property, used exclusively for colleges or other school purposes," in Art. 207, mean actually used, and used for no other purpose.

8. Property donated to individuals, or corporations as trustees, to be rented for revenue for a period of years, said revenues to be distributed, in the discretion of the trustees, for educational purposes, and after the lapse of the period fixed, to be sold and the proceeds similarly distributed, is not "buildings and property (or property) used exclusively for colleges or other school purposes," and therefore not exempt under any construction of Art. 207.

The opinion of the Court was delivered by

MANNING, J. Paul Tulane gave to certain designated persons in New Orleans real estate situated therein for the purpose of using the income thereof for the promotion and encouragement of intellectual, moral, and industrial education of the white youth in that city. This property has been assessed for taxation in 1883 at $288,700.

The administrators of Mr. Tulane's bounty claim that the property is exempt from taxation, and this proceeding presents that issue.

The provisions of the last two Constitutions for exemptions are nearly identical. The points of similarity and of difference, so far as concerns our present inquiry, will appear more strikingly by juxtaposing them. The words used are:

1868. Property actually used for church, school, or charitable purposes.

1879. Buildings and property used exclusively for colleges or other school purposes.

The points of difference are that the word "buildings" is introduced into the later instrument, and "exclusively" is substituted to "actually." In this second alteration the last Constitution is more stringent than its predecessor, for property or a building might be actually used for school purposes, and yet not used exclusively. If we are then to suppose that there was a design in discarding the word "actually," and employing "exclusively," the intent must have been to restrict the exemption within narrower limits than before.

The word "buildings" is redundant, and seems to have been injected in the instrument more from a desire to change the expression than to alter the meaning. Certainly property includes buildings. The only

effect of it is to make " property " refer especially to whatever, other than buildings, is used exclusively for school purposes, such as chemical or philosophical apparatus and the like.

The Journal of the Convention is not very luminous upon the matter, but some light is thrown upon it by the disposition made of an amendment, offered by the counsel who made the oral argument before this Court on behalf of the administrators with such felicity of diction and earnestness of conviction.  Mr. McConnell offered to amend by inserting, " and the property thereof, so far as may be actually necessary for the use or support thereof."  It was lost.  Journal, 189.

This very decidedly exhibits the animus of the Convention upon this matter of exemptions.  Here was a distinct proposition to exempt, not only the property of an institution necessary for its use, but also such property as is necessary for its support.  The opportunity was then given to disclose just what we are now seeking to find, viz., the meaning and intent of the body then formulating an organic law.  If exemptions were intended to embrace property, the revenues of which were necessary to support an institution of any kind, here was an occasion when that principle could be stamped upon the instrument in characters so sharply defined that there could be no mistake in reading them. The principle was repudiated.  The amendment was rejected.

Besides, the judicial interpretation of the exemption clause of the Constitution of 1868 was before the Convention.  A series of decisions, familiar to every lawyer and to most business men in that body, had settled the meaning of the words used in that Constitution.  They knew that an exemption from taxation of a building belonging to a society had been adjudged to have terminated when the building ceased to be used for the purposes of the society, but was leased for its profit, New Orleans vs. N. O. Mechanics' Society, 27 An. 436, and that the parsonage of a church, used as a home for its minister, had been denied exemption.   First Presb. Church vs. New Orleans, 30 An. 259.   And in a case where all the Justices read opinions, the first opinion of the Court enlarging the exemption was reversed on rehearing, and the strictest construction of the exemption clause was maintained.  La. Cotton Manuf. Co. vs. New Orleans, 31 An. 440.

The legislative interpretation of this clause accorded with the judicial, or rather the legislature compelled the practical enforcement of the judicial interpretation by passing a special law requiring assessors to assess " all property not absolutely used for church, school, or charitable purposes."  Acts Ex. Sess. 1877, p. 121.

With this phraseology of the Constitution of 1868 before the eyes of those who were framing a new one, judicially construed uniformly to

have one meaning, the last cited decision having been rendered at the instant of their assembling, the decisions of this Court forming as we know the subject of comment in their debates, it is not possible that they should have employed language so nearly alike that of the previous Constitution, if they had intended to introduce a different principle. They would rather have avoided the use of its terms, and have so shaped their language as to carve the different intention in bold relief. And this the more, since the accepted canon of construction is that exemptions are rigidly confined to the objects specially designated.

The proviso inserted in the present Constitution strengthens this view—provided the property so exempted be not used or leased for purposes of private or corporate profit or income. Even if the main clause were susceptible of the construction claimed, it is limited and controlled by this denegation of exemption when the property is either used or leased for corporate income. None of the property, for which exemption is now claimed, is or can be used for college buildings. It can serve the purpose for which it has been given only by leasing it in order to derive income. Unless it yields corporate income, the Board of Administrators could not carry out the purpose for which it was given.

Nor is it without significance that the tendency of legislation, whether organic or ordinary, is to reduce and circumscribe exemptions from taxation to the narrowest possible limits, and even to totally abolish them. Each succeeding Constitution of the several States of our country gives evidence of this tendency of modern thought, and the Constitutions of the two States, which we are told had a marked influence in moulding our own, are conspicuous illustrations of the steady advance of this conception of public policy.

The inducements to swerve from the clearly cut path of judicial contraction are tempting. The munificent bounty of the donor, the admirable purpose to which he has consecrated it, the eminent men whom he has selected with rare good judgment to effectuate his purpose, the visions of the rich harvest of intelligence and culture which will spring up from the sterile fields of ignorance and brutality, when they have been irrigated by the stream of Paul Tulane's beneficence—all invite a relaxation of judicial interpretation. But courts dare not permit sentiment to displace reason, nor policy to usurp the function of authority.

It is therefore ordered and decreed that the judgment of the lower court is avoided and reversed, and that the peremptory mandamus is refused at the relators' costs in both Courts.

Fenner, J., recuses himself, being one of the administrators.

State ex rel. Administrators Tulane Education Fund vs. Board of Assessors.

### DISSENTING OPINION.

POCHÉ, J.   Believing that the relators are justly and legally entitled to the exemption which they claim, I dissent from the opinion and decree rendered by the majority of the Court in this case.

With due deference, I suggest that there is a grievous error in the conclusion that the provisions of Art. 118 of the Constitution of 1868, and those of Art. 207 of our present Constitution, are nearly identical, and that the addition of words in the latter Article arose "more from a desire to change the expression than to alter the meaning."

Article 118 of the Constitution of 1868 reads as follows:

"The general assembly shall have power to exempt from taxation property actually used for church, school or charitable purposes."

The following are the provisions of Art. 207 of the present Constitution which have reference to the subject of our present inquiry:

"The following property shall be exempt from taxation, and no other: All public property, places of religious worship or burial, all charitable institutions, all buildings and property used exclusively for colleges or other school purposes, the real and personal estate of any public library and that of any other literary association used by or connected with such library, all books and philosophical apparatus, and all paintings and statuary of any company or association kept in a public hall; provided, the property so exempted be not used or leased for purposes of private or corporate profit or income."

1.   It will be noticed, in the first place, that in the previous Constitution the whole subject is relegated to the general assembly with the implied power to grant or deny the exemptions provided for.   Hence, no exemption could be claimed without action on the part of the legislature.   But in the present Constitution the exemptions are imperative and absolute; the Article is self-operative, and places the exemptions beyond the reach and action of the legislature.

This line of conduct of the convention was prompted by the state of uncertainty which had hitherto marked our legislation, and which prevailed in our jurisprudence on the subject of exemptions from taxation.   The decisions quoted in the majority opinion were known to the framers of the Constitution, who aimed to place the advancement of education in this State beyond the reach of the principles therein enunciated.   Hence, these decisions do not apply.

2.   It appears, in the next place, that, under the Constitution of 1868, "church, charitable and school purposes," were placed on an equal footing on the score of exemption, and were provided for in the same sweeping clause, and that the language used clearly excluded the possibility of exempting from taxation any other property but

that which was actually used for either of the three enumerated purposes.

Hence, in accordance with the only legislation which could be framed under such restrictions, it was correctly held by courts that churches only, schoolhouses or college buildings only, and buildings and appurtenances occupied and used in the dispensation of charity only, were exempted from taxation. A reference to our present Article (207) makes it apparent that this restrictive exemption has been retained, in so far as places of religious worship or burial and charitable institutions are concerned. But the Article discloses an entirely different provision touching exemptions referring to college or school purposes; and it proposes to exempt "all buildings and property used exclusively for college or other school purposes; * * * * provided the property so exempted be not used or leased for purposes of private or corporate profit or income."

Now, is it correct, either in law or in fact, to argue that a building cannot be used for the purpose of a college, "but as the habitation of a college?" Would not a building pertaining to a college, and used as apartments for the college professors, be understood as being used for college purposes? The proposition admits of no doubt. Would not the farm, its working animals and implements, of an agricultural college be entitled to exemption, under the Article, equally with the college building? Would the sale of the fruits of such farm, the proceeds being applied to the support of the school, justify the conclusion that the farm would be liable to taxation? I imagine not.

To my mind it is clear that this language, "provided the property so exempted be not used or leased for purposes of private or corporate profit or income," is a negative proposition clearly pregnant with the affirmative idea that such property can be used or leased for other purposes but those of corporate or private profit or income.

If it be not so; if it be true, as held in the majority opinion, that such property can be used for no other purpose, but "as the habitation of a college or school," and that such property cannot be leased at all, for a lease necessarily implies profit or income, why would the convention have made use of the proviso at all? It is hardly fair to suppose, as limited in the opinion, that the delegates were merely bent on a play of words. Under the well recognized canon of interpretation, full effect must be given to every word of an act, and every word must be understood under its common acceptation.

In my humble opinion, the correct construction of the clause is, that buildings and other property of colleges and schools may be used and

leased for income or profit, provided the same be used exclusively for the college or school, and not for the purpose of enriching the corporation owning the property, or persons connected therewith.

I have carefully refreshed my memory on the debates of the convention on this subject, by an examination of the journal of that body, and I find no proceedings which justify the conclusion, that the spirit of the convention was adverse to the construction which I adopt.

The quotation made by my learned brothers from that journal, touching the amendment proposed by Mr. McConnell is not precisely accurate.

The journal shows that Mr. McConnell offered to amend by inserting after the word "institutions," "and the property thereof, so far as may be actually necessary for the use or support thereof," whereupon Mr. King moved to amend the amendment, by inserting after "property" the words "of charitable institutions," and by striking out the word "thereof." It therefore appears that the amendment, which was voted down, actually read as follows: "and the property *of charitable institutions,* so far as may be actually necessary for the use and support thereof."

The amendment contemplated an exemption exclusively for the benefit of charitable institutions, and its rejection shows that the convention intended such an exclusive privilege to extend to school or college purposes only.

That action of the convention, as well as several amendments which were made to the original report of its committee on taxation, interpreted in the light of numerous other provisions in the Constitution, on the subject of education, should satisfy the most casual reader that the convention intended by all means in its power to foster education in the State; and as far as the limited means of a pillaged and improverished State would justify, to spare no expense or to shrink from no sacrifice which would extend the benefits of education to all classes of our people.

I regret and deplore that the spirit which animated that body, and which would not hesitate to make cheerfully the sacrifice which is asked at our hands in this case, should have encountered a check from the Supreme Court of the State.

Rehearing refused.