Young Men's Christian Association of Omaha, Nebraska, Appellant, v. County of Douglas and George Heimrod, County Treasurer of Douglas County, Appellees.

Filed October 18, 1900. No. 9,279.

1. Exemption From Taxation: Intentional Use of Property. An intention to use property occupied for business purposes at some uncertain time in the future for purposes which will render it exempt from taxation under the laws of the state will not preclude its being taxed under the general revenue laws, so long as occupied for such business purposes.

2. ————: Statutes: Construction. Statutes providing for exemption of property from taxation when used for purposes therein mentioned, being an exception to the general rule of taxation and in derogation of the equal rights of all, are to be strictly construed.

3. Young Men's Christian Association: Partial Use of Property for Business Purposes. The Young Men's Christian Association of Omaha, being organized and incorporated for education, charitable and religious work, owned certain real estate, upon which was erected a building, used by it for the purpose of carrying forward the object of its organization, except the first floor thereof, which was rented for business purposes, the rents being applied to the work of the association. *Held*, That the portion of the property occupied for business purposes was not used excusively for educational, charitable and religious work, and therefore not exempt from taxation under the general revenue laws of the state.

Error to the district court for Douglas county. Tried below before Keysor, J. *Affirmed.*

*Acheson & Adams,* for appellant.

*Howard H. Baldrige, County Attorney,* and *H. L. Day, Deputy, contra.*

Holcomb, J.

A petition was filed for the purpose of obtaining an order of injunction to restrain the appellees, the county

of Douglas and the county treasurer thereof, from collecting certain taxes alleged to have been illegally assessed against the appellant's property situated in Omaha, Douglas county, and consisting of a city lot and a building erected thereon. In the petition it is alleged that the appellant is a duly organized corporation, under and by virtue of the laws of the state, maintained and existing for school, religious and charitable purposes, and that the property which is attempted to be assessed is exempt under the constitution and the laws of the state.

It is to be conceded at the outset, as it is admitted by the demurrer to the petition which was filed and under which the question was decided, that the object and purposes of the appellant corporation are such as to exempt the property, used exclusively by it for the purposes of its organization, from taxation under the laws of the state. The controversy as to its property being taxable, notwithstanding the exemption referred to, arises, and becomes apparent, from the following allegations in the second paragraph of the petition. After describing the lot of land owned by it, it is said: "That on this lot this plaintiff constructed, about the year 1887, and has ever since been maintaining a large four-story stone building, which building has always been used for said purposes of said Young Men's Christian Association. The first floor of said building the plaintiff is now leasing temporarily for business purposes, the rents thereof, as well as all income from all sources, being used exclusively in maintaining the educational, religious and charitable work of the plaintiff. It is the purpose and intention of the plaintiff to use the first floor for offices, gymnasium, baths, etc., but owing to its restricted income, it is compelled, for the present, to rent the same and apply the rents to the running expenses of the institution until its income from other sources and voluntary donations will pay the expenses of maintenance for the purposes aforesaid." Whether the assessment of taxes sought to be restrained is against the entire property, or only the

portion thereof rented for business purposes, is not disclosed by the petition. It is alleged that there was levied and assessed against the plaintiff and against the said lot of ground taxes for the years 1892, 1893, 1895 and 1896.

The demurrer to the petition raises but one question, and that is whether or not, under the constitution and laws of the state, the plaintiff's property, or the portion thereof rented for business purposes, is wholly and altogether exempt from taxation. It is provided by section 2, article 9, of the constitution that "the property of the state * * * shall be exempt from taxation, and such other property as may be used exclusively * * * for school, religious, * . * * and charitable purposes, may be exempted from taxation, but such exemption shall be only by general law." By section 2, article 1, chapter 77 of the revenue laws it is provided: "The following property shall be exempt from taxation in this state: * * * * such other property as may be used exclusively * * * for school, religious, cemetery and charitable purposes." While there is an allegation that the plaintiff intends to use the rooms now rented for business purposes, for offices, gymnasium, and other purposes proper and necessary for carrying out the objects of its organization, we do not think such allegation can materially affect the decision of the case as to the present situation and uses to which the property is put as disclosed by the petition. An intention to use it for such purposes in the future, which would doubtless, when so used, exempt it from taxation, is not a present exclusive use, as contemplated by the constitutional and statutory provisions quoted. In the case of the *Academy of the Sacred Heart v. Irey*, 51 Nebr., 755, it is held that, in order to be exempt from taxation, the property must be used directly, immediately and exclusively for the purposes mentioned in the provisions referred to. It can not, we think, under the allegations of the petition, be successfully contended that, because of an intention to use the

property at some time in the future directly by the association for offices, etc., such intention is a direct and immediate use for such property. As has been aptly said by Mr. Justice Brewer in *Washburn College v. Commissioners of Shawnee County*, 8 Kan., 344, 349: "An intention to occupy is not equivalent to occupation, does not tend to prove it. The pleadings recognize the difference, for they admit the failure while they allege the intention to occupy. An occupation which is to be—though here it is only which may be—is no present use. Nor is ownership evidence of use. Full possession and perfect title are consistent with total failure to use. This is too plain to need either argument or illustration. If the framers of the constitution had intended to exempt all property belonging to literary and charitable institutions from taxation, the language employed would have been very different. They would have used the simple, ordinary language for expressing such intention. The fact that they ignored 'ownership', and made 'use' the test of exemption, shows clearly that they recognized the essential distinction between the two, and established the latter rather than the former as the basis of exemption." In *First Christian Church v. City of Beatrice*, 39 Nebr., 432, it is held that the possession and ownership of a lot which is rented, the rent derived therefrom being set apart to constitute a building fund for the purpose of erecting a church edifice thereon, which the society had resolved to build, was not a use of the property such as would exempt it from taxation under the provisions of the law referred to. It would, therefore, seem that an intention to use, at some indefinite time in the future, the rented portion of the property exclusively for the purposes for which the society is organized can not control in the determination of the legal effect of the present uses of the property as alleged in the petition.

The controversy is thus narrowed to the one question of whether the renting of the first floor of the building for business purposes, when the income or rental is de-

voted to the objects of the association, is an exclusive use
of the property for religious and charitable purposes,
within the meaning of the law. In arriving at a conclu-
sion with respect to the matter we are to bear in mind
that, the exemption claimed being an exception to the
general rule of taxation, and in derogation of the equal
rights of all, the statute is to be strictly construed. This
does not mean that there should not be a liberal construc-
tion of the language used in order to carry out the ex-
pressed intention of the fundamental lawmakers and
the legislature; but, rather, that the property which
is claimed to be exempt must come clearly within the pro-
visions granting such exemption. As is said by many
eminent authorities, the exemptions are granted on the
hypothesis that the association or organization is of
benefit to society, that it promotes the social and moral
welfare, and, to some extent, is bearing burdens that
would otherwise be imposed upon the public to be met by
general taxation, and that from these considerations the
exemption is granted. There is, in this case, no question
as to the organization which claims the exemption being
one serving such beneficial purpose, and entitled to the
privileges granted, in so far as its property is used exclu-
sively for such purposes. It is not whether it is entitled
to any exemption, but whether the property claimed to
be exempt is exclusively used for the purposes of its or-
ganization. In determining this, we are to adhere to a
strict rule of construction of the language used granting
the exemption. *Cincinnati College v. State,* 19 Ohio, 110;
*Stahl v. Kansas Educational Ass'n,* 54 Kan., 542; *State v.
Assessors,* 35 La. Ann., 668.

It is argued that, the appellant being in the actual
possession and use of the property taxed for the legiti-
mate purposes of its charter, and renting two rooms
temporarily, applying the rents to the charitable pur-
poses of the organization, the property is within the pro-
tection of the statute exempting it from taxation, not-
withstanding the temporary renting of the rooms on the

first floor for business purposes.  To hold that property rented for business purposes is exempt when the rentals or income therefrom are used exclusively for religious, charitable or educational purposes, is extending the operation of the law further than is warranted by the language used.  There is a clear and well defined distinction between the use of property and the use of the income derived therefrom.  As was said in *First Christian Church v. City of Beatrice, supra,* p. 436: "It might be that these rents would be exempt under the provisions of the constitution and the statute to which allusion has been made, for it might be contended with much plausibility that the money derived from rents is property to be used exclusively for religious purposes."  There may be an exclusive use of the income and not of the property from which such income is derived.  Webster defines "exclusive" as "possessed and enjoyed to the exclusion of others; debarred from participation or enjoyment," and "exclusively" is defined, "in a manner to exclude; as, to enjoy a privilege exclusively."  If the property be used by appellant exclusively for purposes of its own organization, this would exclude the idea of others using it for an entirely different or secular purpose.  The fact that appellant is in the exclusive use of a portion of the property for the legitimate purposes of its organization, does not preclude the occupancy of other portions for purely secular purposes, and thus subject the property so used to the general law of taxation.  This has been repeatedly held in other jurisdictions, where laws exempting from taxation property used for charitable, religious and educational purposes have been under consideration; and it occurs to us that the mere fact of proximity cannot vary the rule.  Whether it be portions of the same property, or separate and distinct parcels, it is governed by the same rule of construction.  Our law is broad and comprehensive, and provides that all property exclusively used for the purposes mentioned is exempt, negativing the idea that property not so used is entitled to such favor.  In

*Stahl v. Educational Ass'n, supra,* where the language under which the exemption was claimed is very similar to that in the present instance, it is said, at page 549, by Horton, C. J.: "This construction omits to give sufficient force to the following language of section 6, viz., 'for the exclusive purposes of religion or education.' The property exempt from taxation must not only have been received, held or appropriated by or for the association, but it must 'be received, held or appropriated for the exclusive purposes of religion or education,' except the ground for a cemetery. Therefore, giving the provisions in the statute creating the exemption a strict construction, the charter must be interpreted to mean that the real or personal property of the association must be received, held or appropriated 'for the exclusive purposes of religion or education only;' not for lease, investment or profit. When its real estate is rented to a tenant, or its funds invested in other property for profit, or loaned at interest, the property thus rented or invested or loaned will be liable to taxation, as much as any other property that is rented or invested or loaned, no matter in whose hands it might be." In *Cincinnati College v. State, supra,* it is held: "The property of literary and scientific societies is only exempt from taxation when used exclusively for literary and scientific purposes. If used for other purposes it is liable to taxation, although the proceeds are in future to be applied for the promotion of literature and science." Says Caldwell, J.: "It would, we think, be rather a forced construction of language to say that this building, with its eight stores, its merchants' exchange, and its other rooms used for miscellaneous purposes, is used exclusively for literary and scientific purposes. * * * But when any society, no matter of what kind, whether scientific, literary, or religious, enters the common business of life, and uses property for the purpose of accumulating money, the government should, and we think the statute does, treat it in the same way persons are dealt with, who are using property in a similar manner, and engaged

in the same business.   Government can not discriminate between the uses which different societies or individuals will make of the proceeds of their business, and determine that this society or individual will make a more worthy disposition of the proceeds of his business than that, and therefore the one shall be taxed and the other not." In *Cleveland Library Ass'n v. Pelton*, 36 Ohio St., 253, 258, it is said: "The fact that income derived from rents of parts of the building not used is devoted exclusively to the objects and purposes of the association, and not used for the benefit or profit of its members, can make no difference.   The law looks to the property, as it finds it in use, and not what is done with its accumulations." To the same effect are *Gerke v. Purcell*, 25 Ohio St., 229; *State v. Assessors*, 35 La. Ann., 668; *People v. Collison*, 22 Abb. N. Cas. [N. Y.], 52; *Salem Lyceum v. City of Salem*, 154 Mass., 15.   We have not overlooked the fact that many of the authorities cited are under exemption statutes differing from ours in some respects, and that some differences exist between most, if not all, statutory provisions governing the subject.   Yet, there are principles which are generally applicable to all, and which we have attempted to apply in the present case.   We have care fully examined the authorities cited by appellant, and find none of them in serious conflict with the views herein ex pressed, and, for the most part, the cases cited may be readily distinguished by reason of peculiar conditions surrounding the case decided as disclosed by the opinion rendered, or of special charters granting exemption.

The language of the statute is clear and explicit. Under it all property used exclusively for the purposes mentioned is exempt from taxation.   Property not so used is subject to the general laws of taxation.   Nor do we think that the proximity of one class of property to the other is material; the sole question being whether the use of the property renders it exempt.   It is not necessary that the property should be such as to permit of its separation into distinct and definite parcels or tracts of land.

As is said in *Proprietors of Meeting House v. City of Lowell*, 42 Mass., 538, 541: "There may be several distinct tenements under the same roof; and tenements are as essentially distinct, when one is under the other, as when one is by the side of the other." A portion of appellant's property being used for business purposes, and, therefore, not within the purview and privilege of the statute referred to, we regard it as the evident intention of the legislature that such property is and should be subject to the general revenue laws, as all other property in the state. *Cleveland Library Ass'n v. Pelton, supra; Gerke v. Purcell, supra; Proprietors of Meeting House v. City of Lowell, supra; Cincinnati College v. Yeatman*, 30 Ohio St., 276; *Mayor of Baltimore v. Grand Lodge*, 60 Md., 280; *People v. Collison, supra*.

In reaching a conclusion in this case we do not desire to be understood as holding that all of the property mentioned in the petition of appellant is subject to taxation, but only that part which is used for other than the purposes contemplated by the organization maintained by appellant.

The ruling on the demurrer we regard as a correct expressing of the law, and accordingly affirm the judgment entered therein.

AFFIRMED.