**WENNER, County Treas., et al. v. MOTH-ERSEAD, Bank Com'r, et al.**

No. 17733. Opinion Filed Feb. 1, 1927.

Rehearing Denied and Dissenting Opinion Filed Feb. 28, 1928.

(Syllabus.)

**1. Taxation—Liability of Bank Assets Held by Bank Commissioner to Reimburse Depositors' Guaranty Fund.**

Under the provisions of section 6, art. 10, of the Constitution, property taken charge of and held by the Bank Commissioner for the specific purpose of reimbursing the depositors' guaranty fund for moneys paid out of same is not exempt from general taxation.

**2. Taxation—Exemptions — Constitutional Limitations.**

Under the provisions of section 50, art. 5, of the Constitution, and section 46 (U) art. 5, Id., the Legislature has no power to exempt property from taxation, except as provided in the Constitution.

**3. Same—Necessity for Definite Exemption Law.**

Under the recognized rule of law, property is never exempted from taxation except by a special and definite provision of law.

**4. Banks and Banking—Constitutional Authority for State Department.**

Section 1, art. 14, of the Constitution does not create a State Banking Department, nor a State Bank Commissioner, nor a fund for protection of depositors in the state banks, but merely authorizes the Legislature to create same by law.

**5. Same—Creation and Nature of Depositors' Guaranty Fund—Liability to Taxation.**

By an Act effective May 26, 1908, the Legislature, within the limitations prescribed by said section 1, art. 14 of the Constitution, created the State Banking Department, and prescribed the manner of its regulation, also created the office of Bank Commissioner, prescribing his powers and duties, and further created a depositors' guaranty fund, defining its purposes, providing how such fund should be raised and the manner of handling same.

Said act does not provide for raising such guaranty fund by general taxation upon all property within the state, but provides for a system of raising and maintaining such fund by special assessments levied against each individual state bank, according to its average daily deposits.

Under said chapter the specific and only purpose of such fund is the protection of depositors in state banks.

Such being the specific and only purpose of such fund, the fund itself and property taken charge of by the Bank Commissioner for the purpose of reimbursing such fund is not exempted from taxation under the general revenue laws of the state.

The fund itself does not belong to the state in its sovereign capacity as a state, but is merely held by the state through its constituted agent in the character of trustee for the sole benefit of depositors in state banks.

Error from District Court, Logan County; Chas. C. Smith, Judge.

Injunction by O. B. Mothersead, State Bank Commissioner, et al. against Fred L. Wenner, County Treasurer of Logan County, et al. Judgment for plaintiffs, and defendants bring error. Reversed, with directions.

Geo. W. Partridge, Co. Atty. (R. W. Stoutz, special counsel), for plaintiffs in error.

M. W. McKenzie and Fred W. Green, for defendants in error.

HARRISON, J. This appeal is to reverse an order and judgment of the district court of Logan county, granting a permanent injunction against the collection of taxes assessed against certain real estate, consisting of improved lots in the city of Guthrie, and held by the State Bank Commissioner through a sheriff's deed, for the purpose of reimbursing the depositors' guaranty fund for money expended by the Bank Commissioner in paying off depositors in an insolvent bank.

The material facts, in substance, are: That in October, 1921, the State Bank of Oklahoma, Guthrie, Okla., became insolvent and its affairs taken charge of and assets taken over by the State Bank Commissioner and certain amounts paid out of the depositors' guaranty fund to depositors by the Bank Commissioner. Among the assets of said bank, thus taken over, was a mortgage or mortgages on the real estate above mentioned. The Bank Commissioner foreclosed said mortgage and took sheriff's deed to the real estate covered thereby and he'd same for the purpose of reimbursing the depositors' guaranty fund.

The sheriff's deed was delivered on July 22, 1922. Prior thereto, viz., in January, 1922, said property was duly assessed for taxes for said year and was likewise assessed for the ensuing years, 1923, 1924, and 1925. In April, 1926, the alleged amount of delinquent taxes and penalties due on said real estate aggregated something over $17,000, and said real estate was advertised by the county treasurer of Logan county for sale for the amount of delinquent taxes and penalties due.

The State Bank Commissioner obtained a temporary restraining order, and upon final hearing a permanent injunction against the collection of said taxes, and the county of Logan, through its county treasurer, by its county attorney, has appealed from said order and judgment to this court for reversal.

The question involved is whether in fact and in law the title to said real estate thus held by the Bank Commissioner was really vested in the state as a sovereignty, to do with and dispose of as it saw fit, or whether it was merely vested in the State Bank Commissioner as a governmental agency of the state, and held in trust by him for the benefit of the depositors' guaranty fund.

If the absolute title to such property was actually vested in the state as a sovereignty with power to dispose of same for any purpose for which it saw fit, and the state would obviously have power to do with its own public property, then under section 6, art. 10, of the Constitution, such property would be exempt from taxation.

Said section 6 is as follows:

"All property used for free public libraries, free museums, public cemeteries, property used exclusively for schools, colleges, and all property used exclusively for religious and charitable purposes, and all property of the United States, and of this state, and of counties and municipalities of this state; household goods of the heads of families, tools, implements, and live stock employed in the support of the family, not exceeding $100 in value, and all growing crops, shall be exempt from taxation: Provided, that all property not herein specified now exempt from taxation under the laws of the territory of Oklahoma, shall be exempt from taxation until otherwise provided by law: And provided further, that there shall be exempt from taxation to all ex-Union and ex-Confederate soldiers, bona fide residents of this state, and to all widows of ex-Union and ex-Confederate soldiers, who are heads of families and bona fide residents of this state, personal property not exceeding $200 in value.

"All property owned by the Murrow Indian Orphan Home, located in Coal county, and all property owned by the Whitaker Orphan Home, located in Mayes county, so long as the same shall be used exclusively as free homes or schools for orphan children, and for poor and indigent persons, and all fraternal orphan homes, together with all their charitable funds, shall be exempt from taxation, and such property as may be exempt by reason of treaty stipulations, existing between the Indians and the United States government, or by federal laws, during the force and effect of such treaties or federal laws. The Legislature may authorize any incorporated city or town, by a majority vote of its electors voting thereon, to exempt manufacturing establishments and public utilities from municipal taxation, for a period not exceeding five years, as an inducement to their location."

Thus it is seen that all property of the

state, that is, all property belonging to the state as such, is expressly exempt from taxation.

But in passing upon this question we must take into consideration that the State Bank Commissioner and the depositors' guaranty fund were not created by the Constitution, but that the Constitution, by section 1, art. 14, merely authorized the Legislature to create a Banking Department, a Banking Commissioner, and a fund for the protection of depositors and individual stockholders, as was held in Bynum v. Strain, 95 Okla. 45, 218 Pac. 883.

Said section 1 of art. 14 of the Constitution is as follows:

"General laws shall be enacted by the Legislature providing for the creation of a Banking Department, to be under the control of a Bank Commissioner, who shall be appointed by the Governor for a term of four years, by and with the consent of the Senate, with sufficient power and authority to regulate and control all state banks, loan, trust and guaranty companies, under laws which shall provide for the protection of depositors and individual stockholders."

It will be observed from the foregoing constitutional provision that it does no more than to merely authorize and command the Legislature to do the things mentioned in said provision.

However, the Legislature, pursuant to authority granted in said section, by an act effective May 26, 1908, chap. 6, S. L. 1907-8, chap. 6. art. 2, R. L. 1910, created the State Banking Department, prescribing the manner of its regulation; also created the office of Bank Commissioner, prescribing his powers and duties, and created a depositors' guaranty fund, defining its purposes and providing how such fund is to be raised, and the manner of its handling. Said act, which is too lengthy to be set out in full herein, does not provide for raising such depositors' guaranty fund by general taxation upon all property within the state, but provides for a system of raising and maintaining such fund by special assessments levied by the banking board against each individual state bank, according to its average daily deposits. The system constitutes no part of the general revenue system of the state, nor does such fund constitute any part of the general revenues of the state. It is raised for the specific purpose of paying off depositors in insolvent state banks, and is raised specifically for the benefit of such depositors, and cannot be used nor appropriated by the state for general expenses of state govern-

ment, nor for any other purpose, other than that for which it was specifically created.

And if there were an unexpended balance left in said fund after all purposes of same had been fully attained, such unexpended balance could not revert to the state to be used by it in defraying the general expenses of state government, but would revert to the individual banks from which it had been collected, and would be prorated to such banks according to the assessments paid into such funds by such bank.

It is in no sense whatever owned by the state in its sovereign capacity as public property of the state; it is in reality the private property of the banks, which by paying into such fund the assessments made against them made up the fund itself, but such fund is held under the law by the state through its constituted agents in the capacity and character of trustees for the benefit of depositors.

The title to such property being of this character, the property itself or property taken charge of, as was the property involved here, does not come within the exempting provisions of section 6, art. 10, of the Constitution, and is not exempt from taxation.

Besides, section 50, art. 5, of the Constitution provides:

"Sec. 50. The Legislature shall pass no law exempting any property within this state from taxation, except as otherwise provided in this Constitution."

And section 46, subdivision (U) of article 5, Id., provides:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, * * *

(U) "Exempting property from taxation."

The rule governing the claim of exemption from taxation is emphatically and clearly stated in Tulane Educational Funds v. Board of Assessors, 35 La. Ann. 668, as follows:

"Exemptions from taxation are always strictly construed against the exemption, nothing can be supplied by intendment or inference."

The rule is stated by this court in Oklahoma City v. Shields, 22 Okla. 265, 100 Pac. 559, as follows:

"Claims of exemption * * * must be * * * by express grant."

See, also, 37 Cyc. 891; 26 R. C. L. pp. 302, 313.

The property in question not being mentioned in said section 6, art. 10, of the Con-

stitution, and under said section 46 (U), art. 5, of the Constitution, and section 50, Id., the Legislature being without power to exempt property except as provided in the Constitution, and the recognized rule being that property is never exempted except by specific, definite provisions of law, it follows that the property involved herein is not exempt, but is subject to taxation, and that the honorable trial court erred in granting the order of injunction herein appealed from.

The judgment is therefore reversed, with directions to dissolve the injunction granted.

Reversed, with directions.

All the Justices concur.

Note.—See under (1) 37 Cyc. pp. 873, 915 (Anno). (2) 37 Cyc. pp. 887, 888 (Anno). (3) 37 Cyc. p. 892. (4) 7 C. J. p. 481, §12; p. 484, §15. (5) 7 C. J. pp. 484, 485, §15; 37 Cyc. pp. 873, 915 (Anno). See under (1, 2) 26 R. C. L. pp. 302, 313; 3 R. C. L. Supp. p. 1466; 4 R. C. L. Supp. p. 1657; 5 R. C. L. Supp. p. 1399; 6 R. C. L. Supp. p. 1547.

### On Petition for Rehearing.

RILEY, J. We are not unmindful of State v. Cockrell, 27 Okla. 639, 112 Pac. 1000; Lovett v. Lankford, 47 Okla. 12, 145 Pac. 767. and Lankford v. Schroeder, 47 Okla. 279, 147 Pac. 1049, heretofore cited, nor of the expression in the Cockrell Case:

"That the depositors' guaranty fund, and the funds of a failed bank in the hands of a Bank Commissioner for the purpose of reimbursing the depositors' guaranty fund, is as much a fund of the state as the common school fund, is also true."

But the words underscored indicate that in fact: (1) Neither are considered state funds. (2) Both are considered trust funds. Being trust funds, they are subject to taxation or not dependent upon the individual nature of the property. The school fund being property used exclusively for educational purposes, like that used exclusively for religious and charitable purposes (and being property of the United States), the same was so recognized and exempted from taxation by section 6, article 10, of the Constitution. The fund in the case at bar being administered for the benefit of a class of the citizenship, to wit, depositors in failed banks, and the same being upon a class of property subject to taxation, to wit, trust funds, by force of the Constitution, section 5, article 10, Constitution, "Taxes shall be uniform upon the same class of subjects," the said fund is subject to taxation, for

it is a fund held in trust by the state for the benefit of individuals.

We have also examined State Banking Board v. Okla. Bankers Trust Co., 49 Okla. 72, 151 Pac. 566; Nat. Surety Co. v. State Banking Board, 49 Okla. 184, 152 Pac. 389; State Banking Board v. Okla. Bankers Trust Co., 63 Okla. 260, 164 Pac. 660; and State ex rel. Freeling v. Smith, 77 Okla. 277, 188 Pac. 96, and find that these cases and others following the rule therein announced are not in conflict with the decision herein. None of these cases hold the fund in question to be a state fund; in fact they may be said to be based upon a view that the fund is property in which the state has a substantial interest. Lovett v. Lankford, supra.

The rehearing is denied.

BRANSON, C. J., MASON, V. C. J., and HARRISON, LESTER, CLARK, and HEFNER, JJ., concur.

PHELPS and HUNT, JJ., dissent.

---

HUNT, J. (dissenting). I concurred in the original opinion filed herein on February 1, 1927, but upon consideration of the petition for reharing and re-examination of the authorities cited by defendant in error I am of the opinion that the rehearing should be granted and this cause affirmed upon authority of the cases hereinafter cited.

The question involved in this case is whether or not the assets of the depositors' guaranty fund in possession of the Bank Commissioner are subject to ad valorem taxes. In determining this question, it is necessary to decide whether or not such assets so held by the Bank Commissioner are a state fund. Under our law, if they are a state fund and, as such, property of the state, they are not subject to taxation, and the opinion herein so holds. The opinion, however, holds that such funds belong to the various banks, and the Bank Commissioner merely holds same as a trustee, and the same are therefore not a state fund and are subject to taxation. In our judgment, this holding is in conflict with former holdings of this court as follows:

In State v. Cockrell, 27 Okla. 639, 112 Pac. 1000, the State Examiner and Inspector demanded the right to examine and inspect the assets of the Columbia Bank & Trust Company, which failed in 1909 and was taken over by the Bank Commissioner, the contention there being that said assets in the hands of the Bank Commissioner were a fund of the state, and therefore sub-

ject to examination by the State Examiner and Inspector under the following provision of our statutes:

"The Examiner and Inspector shall examine the books and accounts of state officers whose duties it is to collect or disburse funds of the state or under its management at least once each year."

This case squarely presented the question as to whether or not the depositors' guaranty fund was "funds of the state," and in passing on this question, this court used the following language:

"That the depositors' guaranty fund, and the funds of a failed bank in the hands of a Bank Commissioner for the purpose of reimbursing the depositors' guaranty fund, is as much a fund of the state as the common school fund is also true. The depositors' guaranty fund act was sustained by this court on the theory of the reserved power of the state to alter and amend charters of state banking corporations for the public welfare. See Noble State Bank v. Haskell, 22 Okla. 78, 97 Pac. 595, which is in harmony with Ozan Lumber Co. v. Biddie, 87 Ark. 587, 113 S. W. 796; New York Central & H. R. R. Co. v. Williams, 92 N. E. (N. Y. Ct. App.) 404; and Hammond Packing Co. v. Ark., 212 U. S. 320. This power exercised for the public welfare by the legislative act which causes to be levied the assessment 'against the capital stock of each and every bank or trust company organized or existing under the laws of this state * * * equal to five per centum of its average daily deposits during its continuance in business as a banking corporation,' for the purpose of protecting the depositors of such banks (sec. 3, art. 2, ch. 5, pp. 121-123, Sess. Laws 1909), is the same as that which levies, or causes to be levied, a tax upon the people and property within the state for the maintenance and support of the common schools and educational institutions. The title of such depositors' guaranty fund vests in the state just as much so as the common school lands, or the proceeds of the sale of the same, and the taxes levied and collected for the maintenance and support of said schools, all of which are held in trust by the state for a specific purpose."

This case was decided in 1910, and has been consistently cited and followed since that time.

The next case wherein this question was involved was Lovett v. Lankford, 47 Okla. 12, 145 Pac. 767. In that case the depositors of a failed bank at Sapulpa sought by mandamus to require the Bank Commissioner and the Banking Board to allow a certain claim. It was contended on behalf of the Bank Commissioner and Banking Board that the suit was one against the state, and therefore could not be maintained without the consent of the state. On the other hand, it was contended that the assets of the bank did not belong to the state and this suit was therefore not a suit against the state, but merely a suit against officers discharging a ministerial duty and that the state neither lost nor gained as the result of this litigation. This court held it was a suit against the state and quoted the language above set out from the Cockrell Case, and further quoted from the Cockrell Case, supra, as follows:

"The State Bank Commissioner or the Banking Department is a part of the Executive Department of the state and is entrusted with the receipt, custody, and disbursement of funds of failed banks."

Adding:

"If defendants in error may be considered executive officers of the state, and in performing their duties in administering the law under consideration do so as such officers, and the property intrusted to their control and management by the law is property owned by the state or property in which the state has a substantial interest, then it can hardly be questioned that this suit, in effect, is against the state."

This case was decided in 1914.

The next case in which this question was raised was Lankford v. Schroeder, 47 Okla. 279, 147 Pac. 1049, decided in 1515. In this action, Schroeder, a depositor in a failed bank, brought suit against Lankford, as Bank Commissioner, for recovery of a deposit, and the defense was again interposed that the Bank Commissioner could not be sued, as the funds in his hands were state funds, and a suit against him was therefore a suit against the state. This court sustained this contention and again reaffirmed the rule laid down in the Cockrell Case, citing and quoting therefrom and also citing and quoting from the case of Lovett v. Lankford, supra; syllabus paragraphs 4 and 5 of said case, page 280, being as follows:

"The State Banking Board and the State Bank Commissioner constitute a part of the executive department of the state government, and cannot be sued without the state's consent. * * *

"The state guaranty fund is the property of the state as much as ad valorem taxes collected for the state's maintenance, and the state has a first lien on assets of a failed bank in the hands of the State Bank Commissioner to secure reimbursement of the guaranty fund for sums paid therefrom to the depositors of such bank, and no suit can be maintained by a creditor of the bank against the Bank Commissioner for the ap-

plication of such assets or guaranty fund to the payment of his claim."

This question also found its way into the Supreme Court of the United States in the case of Lankford v. Platt Iron Works, 235 U. S. 461, and Farish v. State Banking Board of Oklahoma, 235 U. S. 498. In the Platt Iron Works Case, the Supreme Court of the United States cited and quoted from State v. Cockrell as follows:

"In State v. Cockrell, 112 Pac. Rep. 1000, the Supreme Court of Oklahoma had occasion to define the duties of State Examiner and Inspector. It decided that the office was constituted by the Constitution of the state and was independent of the control of the Governor, and passing upon the authority of the Examiner and Inspector over the accounts of the Bank Commissioner, it decided that 'the funds and assets' of an insolvent bank are 'under the management of the state,' and 'that the depositors' guaranty fund and the funds of a failed bank in the hands of a Bank Commissioner for the purpose of reimbursing the depositors' guaranty fund is as much a fund of the state as the common school fund.' "

In State Banking Board v. Oklahoma Bankers' Trust Co., 49 Okla. 72, 151 Pac. 566; National Surety Co. v. State Banking Board, 49 Okla. 184; 152 Pac. 389; State Banking Board v. Oklahoma Bankers' Trust Co., 63 Okla. 260, 164 Pac. 660, the same rule was announced and the cases above referred to were cited and followed. It seems, therefore, that this rule has become a settled rule of practice and of property in the administration of insolvent banks in this state and has been recognized and followed by the Supreme Court of the United States, and in our judgment should be followed in the instant case.

Numerous other cases have been called to our attention which hold the statute of limitations does not run against the state in actions on promissory notes held by the State Bank Commissioner as a part of the assets of an insolvent bank. This on the theory that the same is a state fund and the statute of limitations does not run against the state. Following these authorities, I am forced to the conclusion that this property, having been purchased by the Bank Commissioner at foreclosure sale, under the admitted facts herein, became a part of the depositors' guaranty ·fund of the state of Oklahoma and, as such, property of the state, and therefore exempt from taxation under the provisions of section 6 of art. 10 of the Constitution, and the judgment of the district court of Logan county in so holding should be affirmed.

I am authorized to state that Justice PHELPS, who also concurred in the original opinion herein, upon reconsideration, dissents therefrom, and concurs in the views herein expressed.