## In re INDIAN TERRITORY ILLUMINATING OIL CO.

## BOARD of COM'RS of PAYNE COUNTY v. INDIAN TERR. ILLUMINATING OIL CO.

No. 20878.   Opinion Filed May 17, 1932.

Ernest F. Jenkins, Co. Atty., and Henry W. Hoel, Asst. Co. Atty., for plaintiff in error.

Fred M. Carter and C. E. Wilhite, for defendant in error.

KORNEGAY, J. This is a suit to review the action of the district court of Payne county, requiring the board of county commissioners to strike from the list of assessed property of the Indian Territory Illuminating Oil Company, for the year 1928, some oil produced from a restricted allotment in Seminole county, the judgment being rendered on the 20th of August, 1929. The journal entry of judgment embraces three pages of the record, but the matters were simplified, largely by an agreed statement of facts, and the brief of the plaintiff in error states that the sole question in the case is whether or not oil that was produced in Seminole county by the Indian Territory Illuminating Oil Company sometime prior to the 1st of January, 1928, under a lease on restricted Indian land, and which was in storage in Payne county in January, 1928, mixed with other oil, was subject to taxation as property in Payne county for that year, and if so, has the Indian Territory Illuminating Oil Company proceeded in the manner prescribed by law for the purpose of correcting the assessment of said property for taxation on that property in that county during that year?

Just when this oil was produced, the record is not explicit on. The basis of the decision was that the Indian Territory Illuminating Oil Company was acting as a governmental agency, and the order was made that the county commissioners should issue a certificate of error, taking from the tax roll in school district No. 102, Eagle township, the amount of this oil, $169,386, and district No. 91, the amount of $214,322, the remainder of the judgment providing the relief awarded to the Indian Territory Illuminating Oil Company in the way of refund of taxes, etc.

The county commissioners refused to take this off of the assessment list, and the Indian Territory Illuminating Oil Company appealed to the district court with the results above set out. It appears to us in this case that this oil being a part of the property of the Indian Territory Illuminating Oil Company, and having been moved from the wells where produced and mingled with other oil, had become a part of the mass of property of Payne county, and was subject to ad valorem tax just as the farmers' horses, and the oil in storage that was produced from wells of other citizens of the state.

Several cases are cited from this court and other courts, and especially the Supreme Court of the United States, from which the deduction is made by the oil company that it could escape taxation during the year 1928 on this oil on account of the way it had been produced. The point is made that a full-blood Indian was a ward of the United States, and therefore in developing his land for oil, the Indian Territory Illuminating Oil Company became the United States agent, and that what it got out of it was free from taxation imposed and required by the state for its support.

We think this position ignores the rights of the state of Oklahoma and its history. Some of the citizens of the state are classed as wards of the United States, as a foundation for the deduction that the Indian Territory Illuminating Oil Company does not have to pay taxes upon its personal property, that at one time was in the ground, that had been allotted to a full-blood Indian. If the Indian is a ward of the United States, when one takes the Enabling Act of 1906 and reads it, it would appear that the state of Oklahoma was the child of the United States. It is necessary that it have revenue as a means of performing its functions, and to say that the United States government has saved the oil in question from the taxing power of the state, would scarcely agree with the ideas of allowing the state to function and get the means to function, when required to afford to the owner of the land and the lessee the equal protection of the law, and furnish police protection for the property.

It also would scarcely be consistent with the duty of the United States towards the other Indians of the state, and towards the other taxpayers of the state. By virtue of the Enabling Act, all Indians of the Five Civilized Tribes became citizens of the state, entitled to its protection and subject to its laws in large measure, and if we recognize that expenses of government are largely drawn from taxation, which is assessed against real estate, unless there is an overwhelming reason for it, we ought

not to hold that property derived by citizens of the state and other states, by virtue of boring into the ground and getting oil and bringing it to the surface and putting it into the channels of commerce, is exempt from tax.

By the terms of the Enabling Act, certain restrictions were thrown around the people of the state, but when one analyzes the Constitution of the United States, and finds the provisions about admitting states, and examines the case of Coyle v. Smith, 55 L. Ed. 855, decided by the Supreme Court of the United States, holding invalid the limitation sought to be imposed on the people of the state of Oklahoma as to the location of its capitol, it is scarcely consistent to say that the taxing power of the state in this case does not extend to the oil that is here involved, in view of its character and location and ownership at the time of the tax assessment.

The case of Jaybird Mining Co. v. Weir, 271 U. S. 609, 70 L. Ed. 1113, decided by the Supreme Court of the United States, is relied upon by the oil company as exempting it from taxation. When one analyzes the cases that are relied upon in that case for the exemption there allowed, he will find that they all go back to the original case of Choctaw, Oklahoma & Gulf Ry. Co. v. Harrison, 235 U. S. 292, 59 L. Ed. 234. The opinion says: "The lessee is an agency or instrumentality employed by the government for the development and use of the restricted land and to mine ores therefrom for the benefit of its Indian wards," and the case of Choctaw, Okla. & Gulf Ry. Co. v. Harrison, cited above, is cited and relied on. In the Harrison Case it was held that the tax complained of was an occupational tax, and the leases in that case were tribal leases to start with, and the property was still common Indian property, and the royalties were required to be paid into the Treasury of the United States, and the matter was subject from time to time to regulation by government. It was there clearly held that calling it a substitute property tax would not help the matter, and in the body of the opinion we find the following:

"Neither state courts nor Legislatures, by giving a tax a particular name, or by the use of some form of words, can take away our duty to consider its real nature and effect. Galveston, H. & S. A. R. Co. v. Texas, 210 U. S. 217, 227, 52 L. Ed. 1031, 1037, 28 Sup. Ct. Rep. 638.

"It is unnecessary to consider the power of the state of Oklahoma to treat coals dug from mines operated by the appellant as other personalty, and to subject them to a uniform ad valorem tax, for it seems to us clear that the act of 1908 provided for no such imposition. Its very language imposes a 'gross revenue tax which shall be in addition to the taxes levied and collected upon an ad valorem basis.' We cannot, therefore, conclude that the gross receipts were intended merely to represent the measure of the value of property liable to a general assessment—provision is made for determining that upon a different basis. Meyer v. Wells, F. & Co., 223 U. S. 298, 301, 56 L. Ed. 445, 447, 32 Sup. Ct. Rep. 218. The requirement is not on account of property owned on a given day, as is the general custom where ad valorem taxes are provided for, and as the Oklahoma laws require; but the manifest purpose is to reach all sales and secure a certain percentage thereof,—a method commonly pursued in respect of license and occupation taxes. Pullman Co. v. Knott (decided at the present term, 235 U. S. 23, ante, 105, 35 Sup. Ct. Rep. 2).

"A tax upon a merchant's, manufacturer's, or miner's gross sales is not the same thing as one on his stock treated as property. Cooley, Taxn. (3d Ed.) p. 1095. The former is upon his business. In effect, the Oklahoma act prescribes an occupation tax (Ohio Tax Cases, 232 U. S. 576, 592, 58 L. Ed. 738, 745, 34 Sup. Ct. Rep. 372); and, accepting as true the allegations of appellant's bill, we think it cannot lawfully be subjected thereto. The decree of the court below is reversed, and the cause remanded for further proceedings in conformity with this opinion."

With that as a basis, most of the decisions since have been pronounced, and the Jaybird Mining Company Case is an extension of that idea beyond its normal expanse, as it would seem from the dissenting opinions filed therein. On analysis of the C., O. & G. Ry. Co. v. Harrison Case, the foundation of the case shows that it was tribal property based on contracts made before the state. The income tax idea appears to be somewhat different from that of a property tax, as some are required to pay on property, ad valorem, and on the income derived therefrom.

On the whole, these cases seem to be based largely upon the idea of a governmental agency helping one class of Indians protect themselves as against the greed of their fellows, as distinguished from the idea of interfering with a property tax upon that which has been derived from such property and its ownership transferred to a corporation, and has become a part of the mass of property of the citizens of the state.

However, the idea of governmental agency, as applied to the oil in this case, can well be extended both forward and backward. If extended backward, when the government, with like duties owing to its Indian wards, allowed certain classes to make their own contracts, without supervision of the government, and allowed the share of the Indian landowner and the share of the product belonging to the operator, produced as result of labor in extraction, each to be subject to state tax, while the operators' share, working on restricted land, is exempt, equality in burden bearing no longer exists. The operator on the restricted land has the advantage. The Enabling Act (sec. 3) requires that the state Constitution shall "make no distinction in civil or political rights on account of race or color, and shall not be repugnant to the Constitution of the United States and the principles of the Declaration of Independence."

The Supreme Court of the United States, in a subsequent case, however, of Shaw v. Gibson-Zahniser Oil Corp., 276 U. S. 575, 72 L. Ed. 709, had for consideration the question again, and after the Jaybird Mining Company Case was passed on. In that case the Secretary of the Interior had, with restricted funds, bought property which was conveyed to an allottee by deed carrying restrictions against alienation. It was leased out under the supervision of the Secretary, and there was production of oil. Elaborate briefs were filed in the case, and the court, in discussing the matter, after enumerating some of the decisions and the statutory requirements, concludes the opinion as follows:

"Little need be said as to the power of the Secretary of the Interior to exempt the land and its uses from taxation. The power, if it exists, is one conferred by Congress, but neither it nor the Secretary has in terms purported to make or authorize such an exemption.

"The Act of May 27, 1908, contains no express exemption from taxation of the proceeds of restricted lands, but sec. 4 expressly subjects lands from which restrictions have been removed to state taxation. This section was adopted in response to representations that the revenue of the state of Oklahoma was insufficient for state purposes, that large areas of lands within the state allotted to Indians were exempt from taxation as agencies of the federal government and that Indian citizens were enjoying the benefit of local government without taxation. Report of the Senate Committee on Indian Affairs, S. Rep. No. 575, 60th Cong. 1st Sess.; Report of the House Committee on Indian Affairs, H. Rep. No. 1454, 60th Cong. 1st Sess.

"At the time of this legislation restrictions on some allotted lands had been removed by reason of the expiration of the restricted period. There were also allotments on behalf of allottees dying before allotment which in the hands of their heirs were unrestricted. See Marchie Tiger v. Western Invest. Co., 221 U. S. 286, 55 L. Ed. 738, 31 Sup. Ct. Rep. 578. It cannot be assumed that Congress, at a time when it was withdrawing allotted lands from their former exemption in order that Indian citizens might assume the just burdens of state taxation, intended to extend a tax exemption by implication. In any case the Secretary of the Interior has never, by rule or regulation or other action, purported to exempt such lands from state taxation. No such action is to be implied from his authorized action in restricting the power of the Indian grantee to alienate the land. See U. S. v. Ransom, 263 U. S. 691, 68 L. Ed. 508, 44 Sup. Ct. Rep. 230, affirming (C. C. A. 8th) 284 Fed. 108; U. S. v. Brown (C. C. A. 8th) 8 F. (2d) 564; U. S. v. Gray (C. C. A. 8th) 284 Fed. 103; U. S. v. Mummert (C. C. A. 8th) 15 F. (2d) 926.

"Question 1: Answered No.

"Question 2: Answered No."

The first question answered in the negative was as follows:

"Had the Secretary of the Interior, on October 24, 1915, when this land was purchased, power to exempt from such state taxation land purchased under his supervision for a full-blood Creek Indian with trust funds of that Indian, where the land so purchased was, at that time, subject to all state taxes?"

The second question is as follows:

"Is this tax a forbidden tax upon a federal instrumentality?"

As applied to this case, under the agreed statement of facts, at some indefinite time the oil had been produced from a restricted allotment under a departmental lease. However, it happened to have been moved about 100 miles and stored sometime before the 1st of January, 1928, in some storage tanks along with some other oil that we do not know the origin of. Under the Constitution of the state of Oklahoma, exemptions from taxation are scarcely permitted, though there are some instances where there might be. This does not happen to be one of the enumerated cases. Our law upon the subject of tax exemption is fairly well illustrated in some of the cases that we have had, one being Wenner v. Mothersead, 129 Okla. 273, 264 P. 816, wherein the question

came up as to whether or not real estate in the hands of the Bank Commissioner, engaged in liquidating a state bank for the benefit of the depositors under state law, was before the court for consideration, and at page 275 of 129 Okla. the court says:

"Besides, section 50, art. 5 of the Constitution provides:

" 'Sec. 50. The Legislature shall pass no law exempting any property within this state from taxation, except as otherwise provided in this Constitution.'

"And section 46, subdivision (U) of article 5, Id., provides:

" 'The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, * * *

" '(u) Exempting property from taxation.'

"The rule governing the claim of exemption from taxation is emphatically and clearly stated in Tulane Education Fund v. Board of Assessors, 35 La. Ann. 668, as follows:

" 'Exemptions from taxation are always strictly construed against the exemption, nothing can be supplied by intendment or inference.'

"The rule is stated by this court in Oklahoma City v. Shields, 22 Okla. 265, 100 P. 559, as follows: 'Claims of exemption * * * must be * * * by express grant.'

"See, also, 37 Cyc. 891; 26 R. C. L. pp. 302, 313.

"The property in question not being mentioned in said section 6, art. 10, of the Constitution, and under said section 46 (U), art. 5 of the Constitution, and section 50, Id., the Legislature being without power to exempt property except as provided in the Constitution, and the recognized rule being that property is never exempted except by specific, definite provisions of law, it follows that the property involved herein is not exempt, but is subject to taxation, and that the honorable trial court erred in granting the order of injunction herein appealed from."

If the position of the oil company is here tenable, it could erect a refining plant in which nothing except oils from restricted land was used, and dispose of the gasoline so produced tax free. The same with agricultural products, produced under leases approved by the Secretary of the Interior, though not so when produced under a lease not exceeding a year in duration.

The duty of the Indian and the white man, both, to pay taxes to support the government of the state of Oklahoma, is fairly well expressed by a federal decision in the case of Central Coal & Coke Co. v. Carseloway, Co. Assessor, 45 F. (2d) 744, decided by the Circuit Court of Appeals for the 10th Circuit, as follows:

"It is clear that the plaintiffs own properties of large value, situate in Oklahoma. Their ownership is secure because Oklahoma maintains a stable government. If plaintiffs need not contribute to the maintenance of that government, while enjoying the benefits thereof, some all-sufficient reason should appear."

We think that reasoning applies here. There is no reason why the Indian Territory Illuminating Oil Company should not pay taxes upon this oil, as it enjoys the protection of the state government. There is neither defined exemption by positive law, or undefined exemption from rules of policy.

The case is reversed, with directions to the court below to revoke its order directing the county commissioners to strike this property from the assessment roll, and requiring the board of county commissioners to order a refund of taxes paid under protest by the oil company in the aggregate of $7,805.72. The tax-collecting authorities of Payne county are directed to take the necessary steps to collect the amount rebated with penalties in case the money has been returned to the oil company. The defendant in error will be taxed with the costs here and in the court below.

RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., and CLARK, V. C. J., absent.