## In re CARTER OIL CO.'S PROPERTY. CARTER OIL CO. v. COUNTY OF OSAGE et al.

No. 23726.  April 30, 1935.

James A. Veasey, L. G. Owen, and Forrest M. Darrough, for plaintiff in error.

C. K. Templeton, Co. Atty., Frank T. McCoy, John R. Pearson, and John T. Craig, for defendants in error.

PHELPS, J.  On November 23, 1931, the tax ferret of Osage county gave notice to the county treasurer that he had discovered certain personal property belonging to the Carter Oil Company which had been omitted from the tax rolls for the years 1922 to 1931, inclusive, and, under the statutory proceedings for that purpose, sought to place said property upon the tax rolls. Upon hearing, the county treasurer sustained a demurrer to the tax ferret's evidence and dismissed the proceeedings, from which action of the county treasurer an appeal was taken to the county court, and upon hearing, the county court found that the property in question was not subject to ad valorem taxes for the years 1922 to 1927, inclusive, but that it was subject to ad valorem taxes for the years 1928 to 1931, inclusive, and ordered it placed upon the tax rolls for those years, from which decision the Carter Oil Company prosecutes this appeal.

The property which the county court ordered placed upon the tax rolls is described as five four-room collapsible houses, one five-room collapsible house, and one collapsible garage, of a total value of $1,000. It appears that the plaintiff in error had an oil and gas lease on which there were 16 producing wells, and these houses were built for the use of and occupied by the employees of plaintiff in error in operating these wells for oil production, and the garage was used for storage for the trucks and tractors necessary in the operation of the lease, and it is the contention of plaintiff in error that this property is exempted from ad valorem taxes under section 12434, O. S. 1931, providing that the payment of gross production taxes relieves it from the payment of ad valorem taxes upon not only the oil produced but upon the property used in the operation of its wells. The applicable portion of said statute reads as follows:

"The payment of taxes herein imposed shall be in full and in lieu of all taxes by the state, counties, cities, towns, townships, school districts and other municipalities

89

upon any property rights attached to or inherent in the right to said minerals, upon leases for the mining of asphalt and ores bearing lead, zinc, jack, gold, silver or copper or for petroleum or other crude oil or other mineral oil, or for natural gas upon the mineral rights and privileges for the minerals aforesaid belonging or appertaining to land, upon the machinery, appliances and equipment **used in and around** any well producing petroleum or other crude or mineral oil or natural gas, or any mine producing asphalt, or any of the mineral ores aforesaid **and actually used in the operation of such well or mine.**"

In Josey Oil Co. v. Board of County Commissioners of Payne County, 107 Okla. 266, 231 P. 272, this court had under consideration a similar question and in the second and third paragraphs of the syllabus we used this language:

"The gross production tax on oil, as fixed by section 9814, C. O. S. 1921, levies a tax upon the gross amount of oil produced, and such tax is in full and in lieu of a direct tax upon the 'machinery, appliances, and equipment used in and around' the well producing such oil.

"The question whether certain houses, built by the operator of an oil lease for housing his employees, are a necessary part of the equipment of a producing oil lease is one of fact to be determined by the court under the circumstances of each particular case."

In that case the trial court found that certain property used in connection with the oil production was exempted from ad valorem taxes, but further found that the houses on the lease were not exempted, and in the body of the opinion this court, speaking through Mr. Justice Gordon, said:

"We can conceive that in some cases houses upon the leased premises might be included in the word 'equipment', but in other cases houses upon such premises might be wholly outside of the intention of the legislators in the use of this language. If under certain conditions the construction of certain kinds of buildings or structures became indispensable for the proper operation of the wells upon the leases, such structures should be exempt under the language of the law. As we have said above, the question of the necessity of these buildings in such operation was a question of fact for the trial court."

In Board of Equalization of Carter County v. Carter Oil Co., 152 Okla. 99, 3 P. (2d) 816, this question was again before this court, and, speaking through Mr. Justice Riley, we said:

"And we adhere to that rule, for in some

situations such houses might be dispensable agencies of a producing well or mine, for example, in the Oklahoma City oil field where such conveniences are afforded in close proximity to the wells, but we can imagine a situation where an oil well or mine might be located in inaccessible country, and, unless lease houses be provided for employees, and in event they were required to live in distant settlements and required to travel undeveloped roads or trails, the production of minerals would be seriously impaired."

It therefore appears that it is the settled law in this jurisdiction that whether resident houses upon an oil lease are exempted from ad valorem taxes upon the ground that they are "actually used in the operation of such well" is a question of fact to be determined by the trial court, and counsel for defendant in error here urge that that question was determined by the trial court and therefore will not be disturbed upon appeal. In this position they would be eminently correct if the record reflected any evidence tending to support this finding. The writer of this opinion has read every syllable of the record in this case and is unable to say that there is any evidence whatever upon which to base the finding of the learned trial judge. In fact, there was no finding, but merely the announcement of the court's judgment.

When the case was called in the county court, counsel for defendant in error introduced the exhibits and records introduced in the hearing before the county treasurer. They then called as a witness the tax ferret, who gave no relevant testimony except his opinion as to the value of the collapsible houses. They then called Mr. A. J. Wells, the tax man for plaintiff in error, and he was excused after he made the statement that he was not familiar with the value of the improvements in question. Then counsel for both sides stipulated as to the value of the property in question and defendant in error rested. Then, after the demurrer of plaintiff in error to the evidence of defendant in error was overruled, counsel for plaintiff in error called as a witness Charles A. Baker, whose testimony showed that he had been in the employ of the plaintiff in error for a number of years and that when the development of the lease in question was begun it was 27 miles from this lease to Pawhuska and several miles to the nearest village where the employees of plaintiff in error could secure living quarters, and that the roads

leading to the lease "were nothing but trails" and in bad weather they could not be traveled except "a-foot or horseback." He further testified that other "boom towns" sprang up near by after the oil field was developed, but that it was necessary, because of their great number of wells and the expensive machinery necessary in the operation of the lease, to have a number of high-class employees to supervise the production, and that these employees continuously occupied these buildings without paying rent or without deducting from their wages, and that the collapsible garage in question was necessary for the proper care of their trucks, tractors, etc. At the conclusion of the testimony of this witness, plaintiff in error rested, and without making any finding that these collapsible houses in question were not "actually used in the operation of such well," the trial court said:

"Let the record show that * * * judgment is rendered by the court in favor of the Carter Oil Company and against the state of Oklahoma, and Osage county, as to the years 1922, 1923, 1924, 1925, 1926 and 1927, and the judgment of the county treasurer in so far as it affects these years hereinbefore mentioned is by this court affirmed.

"Let the record further show that as to the years 1928, 1929, 1930 and 1931, judgment is rendered in favor of the state of Oklahoma, and Osage county, and against the Carter Oil Company."

Journal entry was afterwards filed, merely reiterating the trial judge's statement from the bench at the conclusion of the trial, without making any finding whatever that the houses were not necessarily a part of the equipment used in producing the oil upon which gross production tax had already been paid.

We therefore reach the conclusion that, since there was no evidence whatever, either on behalf of defendant in error or elicited from the one witness of plaintiff in error and nothing in the stipulation of the parties upon which to base the judgment of the trial court, the same should be, and is hereby, reversed and the cause remanded, with instructions to dismiss.

McNEILL, C. J., and BUSBY, CORN, and GIBSON, JJ., concur.