**BANKERS UNION LIFE INS. CO. v. READ, Insurance Com'r.**

No. 26224.   Feb. 21, 1938.

surance Company, a Colorado corporation, sought to compel Jess G. Read, Insurance Commissioner for the state of Oklahoma, to issue a license to said company authorizing said company to conduct a general life insurance business in the state of Oklahoma. Hereinafter the company will be referred to as the plaintiff, and Mr. Read will be referred to as defendant.

The petition alleged that the plaintiff is a life insurance company incorporated under the laws of the state of Colorado, and with authority is conducting a life insurance business in that state; that it had complied with all the laws of Oklahoma in regard to the admission of a foreign life insurance business within this state; that defendant arbitrarily and without authority of law refused to allow the application and to give and grant plaintiff a .license or certificate of authority admitting it to this state and authorizing it to conduct a life insurance business within this state.

The defendant in his answer denied all the material allegations of plaintiff's petition. alleged that plaintiff had failed to comply with the requirements of the statute of Oklahoma prerequisite to the granting of such permit, and also stated:

"Defendant alleges that the stock of plaintiff is owned and held by the Bankers Union Life Company, holding company; that same is contrary to the public policy of the state of Oklahoma as established by the statutes of this state prohibiting . the stock of any domestic insurance company from being so owned or controlled; that as shown by the financial statements and information filed with the defendant, this relationship has resulted in continual dealing and trafficking between said plaintiff and holding company. Defendant alleges that said control and domination of said holding company by said insurance company is financially unsound; that the purported board of directors of the plaintiff are selected by and acting for said holding company and are not entitled to act as a legal board of directors of the said insurance company: that said plaintiff is not entitled to a permit to do business within the state of Oklahoma, and that its said petition should be denied."

Embry, Johnson, Crowe & Tolbert, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

WELCH, J. This is an action in mandamus by which the Bankers Union Life In

Upon the issues so joined, the cause was heard upon the evidence. Thereafter the trial court entered its order and judgment vacating an alternative writ of mandamus theretofore issued and denying plaintiff's application for a peremptory writ of mandamus. The plaintiff brings appeal.

It is contended that all statutory re-

quirements for the licensing of foreign insurance companies in the state of Oklahoma have been complied with by the plaintiff, and that defendant could not impose conditions not imposed by the Legislature, and that his refusal to issue a license to plaintiff was arbitrary and capricious. Defendant's answer alleged that plaintiff's financial condition was unsound, and the testimony shows that defendant objected to plaintiff's "financial setup." This prompts the inquiry, How much discretion, if any, does the defendant have in the matter of granting a permit to a foreign insurance company to do business in this state?

In the case of Mutual Benefit Life Insurance Company of Newark, N. J., v. Welch, Insurance Commissioner, 71 Okla. 59, 175 P. 45, this court, on rehearing, used this language, which is applicable here:

"* * * We wish to say that, under the law defining the powers and duties of the Insurance Commissioner, that said commissioner is vested with a large and wide discretion. This discretion, however, is not unlimited, but is as fixed by the law itself. The law fixes the sphere within which he may act, and the Legislature may and in this case doubtless has given him a very wide discretion within that sphere, and so long as he acts within the discretion so vested in him by the law he will not be controlled by mandamus or injunction. Although in the first instance the Insurance Commissioner has the right and it is his duty to construe the law in determining the sphere within which he has a right to act, yet it is at last and ultimately the duty of the courts to say whether he has acted within the limits of the powers so conferred on him by the law. * * *"

Section 10474, O. S. 1931, prescribes terms and conditions upon which a foreign life insurance company is permitted to do business in this state. Said section reads in part, as follows:

"No foreign insurance company shall be admitted and authorized to do business in this state until:

"First: It shall file or deposit with the insurance commissioner a properly certified copy of its charter, or deed of settlement, and a statement of its financial condition and business on the thirty-first day of December preceding the day on which it shall apply for permission to transact such business, including such other information and in such form and detail as the Insurance Commissioner may require. * * *"

Section 10467, O. S. 1931, provides that whenever the Insurance Commissioner deems it prudent for the protection of policyholders of this state, he shall examine any foreign insurance company applying for admission to do business in this state, and for the purpose may examine certain witnesses relative to its affairs, transactions, and conditions. Sections 10469 and 10477, O. S. 1931, make it the duty of the Insurance Commissioner to keep himself advised of the condition and affairs of insurance companies doing business in this state, and provide for the refusal of renewal or revocation of licenses to do business under certain conditions.

Section 10469, O. S. 1931, reads in part:

"If the Insurance Commissioner is of the opinion, upon examination or other evidence, that any foreign insurance company is in an unsound condition, * * * or that its condition is such as to render its proceedings hazardous to the public or to its policyholders, * * * he shall revoke or suspend all certificates of authority granted to it. * * *"

Our statutes do not explicitly prescribe the duties of the Insurance Commissioner relative to the granting or refusing of license to foreign insurance companies. It is noted that when an application is presented with all the forms prescribed by statute under the provisions of sections 10467 and 10474, the Insurance Commissioner may require "other information" and may inquire into the "affairs, transactions, and conditions" of the company. Such provisions would be useless or meaningless if he could exercise no discretion concerning the admission of such companies to do business in this state.

If a company presented its application with all the forms prescribed by statute, and if the Insurance Commissioner, after investigation, should be of the opinion that said company was in an unsound condition, or that its condition was such as to render its proceedings hazardous to the public, and if despite his opinion he could not refuse to issue a license, clearly, under section 10469, supra, it would be his duty, after issuing the license, to promptly revoke the certificate of authority granted. To compel him to do that which he must promptly undo would be an absurdity.

It is noted that the sections of the statutes above mentioned are all a part of the same act of the Legislature, and it will be presumed that the Legislature in enacting these statutes intended to give full effect to all sections of the act. As further aid in the construction of the statutes, presumptions will be indulged against any absurd consequences and against useless and meaningless legislation. In construing these stat-

utes we follow the general rules of construction as stated in the syllabus in the case of Board of Com'rs of Nye County v. Schmidt et al., 39 Nev. 456, 157 P. 1073:

"In construing a statute the court must avoid an interpretation which will result in absurd consequences.

"Legislative acts should be construed so as to make all parts thereof harmonious, if a reasonable construction can accomplish the result.

"Where the legislative body manifests a definite purpose in an act, it will be presumed that in furtherance of such purpose the lawmaking power formulated the subsidiary provisions in harmony therewith.

"It will not be assumed that one part of a legislative act will make inoperative or nullify another part of the same act, if a different and more reasonable construction can be applied.

"In construing statutes courts must presume a legislative intendment of reasonable operation of all parts of the act."

As noted above, section 10469, O. S. 1931, gives the Insurance Commissioner extensive power of revocation when after examination he may determine that certain conditions exist. Sections 10467 and 10474 give him the power to examine the affairs, transactions, and conditions of a foreign company seeking admission to this state, from which he could determine the conditions that exist. For these provisions to have any operative effect, any meaning, and to avoid an absurdity, and to make these provisions harmonious with one definite object sought to be accomplished by the Legislature in the enactment of these several statutes, namely, to prevent companies in "unsound condition" from transacting business in this state, and to make these provisions in harmony with the other provisions enacted pursuant to the same definite objective, we must conclude that the Insurance Commissioner's power of refusal of license is co-extensive with his power of revocation. We note the language of the Texas court in the case of Glen Falls Ins. Co. v. Hawkins, 103 Tex. 327, 126 S. W. 1114. In paragraph 3 of the syllabus that court said:

"Where the Commissioner of Insurance is empowered to revoke an existing permit issued to an insurance company because it violates the law, he may refuse to grant a permit for the same reason."

Sections 10467, 10469, 10474, O. S. 1931, were enacted at the same session of the Legislature and relate to the same subject matter. They have a common purpose and are in pari materia, and will be construed as one act. Ratliff v. Fleener et al., 43 Okla. 652, 143 P. 1051; 59 C. J. 1046. Said act confers upon the defendant the authority to refuse to issue a license to plaintiff, if, after examination, defendant is of the opinion that the plaintiff is in unsound condition.

It is well settled that mandamus will not lie to compel the performance of a power the exercise of which lies in the discretion of the officer against whom the writ is sought, unless the action of the officer is capricious, arbitrary, or unreasonable.

It is disclosed by the record that practically all of plaintiff's stock is owned by a holding company; that plaintiff is operated for the sole profit and benefit of said holding company; that plaintiff's statement would show a loss from the past year of operation except for contributions from said holding company by way of stock purchases; that plaintiff has loaned said holding company a large sum of money and has also made a loan to one of plaintiff's directors; that several foreign insurance companies operating in this state who were controlled by holding companies have failed in recent years, and have caused policyholders to suffer losses. That the defendant has made an examination of certain of these failed companies which were controlled by a holding company; that the financial soundness of these companies was found to be dependent upon the soundness of the holding company, and of each unit under its control. That the holding company that controls the plaintiff is not an insurance company, and is not under the supervision of any state department.

There is no showing within the record that defendant's action was arbitrary, capricious, or unreasonable. On the contrary, it appears that he made an examination of plaintiff's affairs and conditions and based his decision upon a course of reasoning and the exercise of sound judgment, and not on mere caprice, nor upon his will alone and without reason.

For the reasons stated, the judgment of the trial court denying the writ is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, PHELPS, CORN, GIBSON, HURST, and DAVISON, JJ., concur.