Maurice B. BALDWIN and La Rissa M. Baldwin, Plaintiffs in Error,

v.

BOARD OF TAX–ROLL CORRECTIONS OF OKLAHOMA COUNTY, et al., Defendants in Error.

No. 37759.

Supreme Court of Oklahoma.

Sept. 16, 1958.

Rehearing Denied Oct. 28, 1958.

Luther Bohanon, Bert Barefoot, Jr., Leon S. Hirsh, Oklahoma City, for plaintiffs in error.

James W. Bill Berry, County Atty., M. M. Thomas, Asst. County Atty., Oklahoma County, for defendants in error.

JACKSON, Justice.

Applicants, Maurice B. Baldwin and La Rissa M. Baldwin, filed an application before the Board of Tax-roll Corrections of Oklahoma County to have certain real property and improvements owned by them declared exempt from taxation.

The claim of exemption is based upon the fact that part of said property is under lease to the Federal Government for postal purposes. The Board denied the application; whereupon applicants appealed to the District Court. The District Court affirmed the order of the Board and applicants appeal.

At the outset we must determine whether this court has jurisdiction to determine the merits of the controversy. The County Attorney contends that we do not.

If the Board of Tax-roll Corrections did not have jurisdiction to determine whether such property was exempt from taxation, it follows that neither the District Court nor this Court has appellate jurisdiction to make such determination. Clark v. Gray, 204 Okl. 221, 228 P.2d 654.

68 O.S.1951 § 184d creates a Board of Tax-roll Corrections to hear and determine allegations of error, mistake or difference as to items contained in the Tax Rolls. This statute specifically authorizes the Board to determine if "Property exempt from taxation has been assessed;". If such fact appears the Board must grant certain specified relief.

The difficulty in the instant case results from the fact that the property involved in this action was assessed as a unit, and only *part* of the building situated on the property is leased to the Federal Government. Therefore, had the Board allowed the claimed exemption it would have then been necessary for the Board to place a valuation on the exempt portion and deduct such amount from the total valuation. Evaluation is a function normally performed by the Board of Equalization. Chapman v. Draughons School of Business, Okl., 287 P.2d 903. In the cited case we held that in cases such as here involved, the property owner could not proceed in the first instance by way of injunction in the District Court. That case also contains dictum to the effect that the sole remedy available where only part of the property is claimed as exempt, is by proceedings before the Board of Equalization. However, it was not contended in that case that the property owner could seek such relief before the Board of Tax-roll Corrections. The sole issue there involved was whether injunctive relief was available where only part of the unit was claimed to be exempt. 68 O.S.1951 § 15.49, provides:

"The proceedings before the Boards of Equalization and appeals therefrom, shall be the sole method by which assessments or equalizations shall be corrected or taxes abated. Equitable remedies shall be resorted to only where the aggrieved party has no taxable property within the tax district of which complaint is made."

Subsequent to the enactment of this statute the legislature enacted 68 O.S.1951 § 184d creating the Board of Tax-roll Corrections, specifically authorizing such Board to correct assessment and abate taxes in certain instances, and further specifically authorized the Board to grant relief when exempt property has been assessed.

Prior to the enactment of the latter statute, this court had held that where a taxable unit was not physically separable the value of the exempt portion should be deducted from the value of the property as a whole. Oklahoma County v. Queen City

Lodge No. 197, I. O. O. F., 195 Okl. 131, 156 P.2d 340. It must have therefore been within the contemplation of the legislature in enacting Section 184d, that in such cases the Board of Tax-roll Corrections would necessarily have to evaluate the exempt portion in order to effectuate the purposes of the statute. If, in a given case, the taxpayer could not go before the Board of Tax-roll Corrections, and had not received notice of the fact that the exempt property had been assessed until after the Board of Equalization had adjourned, his only recourse would be to pay the taxes under protest and sue to recover same. In our opinion one of the purposes for the creation of the Board of Tax-roll Corrections was to obviate the necessity for such involved and expensive procedure. We hold that the Board of Tax-roll Corrections had jurisdiction to determine if a portion of the property was exempt from taxation.

█ Section 184d does not provide for an appeal from the orders of said Board. But it is manifest that in determining whether certain property is exempt from taxation the Board would be exercising a judicial function as opposed to a ministerial function. Therefore, the District Court had jurisdiction to review the orders of the Board by virtue of the express provisions of 12 O.S.1951 § 951.

Is that portion of the applicants' real property *leased* by the Federal Government for postal purposes exempt from taxation?

The lease is for a period of fifteen years, and provides for an annual rental of $18,363. It also contains a provision that "the lessor shall pay all taxes."

The claimed exemption is predicated upon a certain provision contained in the third sub-division of Sec. 3 of the Enabling Act, and repeated verbatim in Art. I, Sec. 3, of the Oklahoma Constitution. Such provision is as follows:

"No taxes shall be imposed by the state on lands or property belonging to or which may hereafter be purchased by the United States or *reserved for its use*." (Emphasis supplied.)

Applicants contend that the emphasized words exempt their property from taxation because it is being *used* by the Federal Government. In their brief applicants specifically call our attention to the fact that they do not claim the property exempt or immune from taxation under the provisions of Art. 10, Sec. 6, of the Oklahoma Constitution. They further admit that this property is not inherently immune from taxation merely because it is being *used* by the Federal Government. In this connection, however, it appears that much of the argument in applicants' reply brief goes to the question of inherent immunity. The tax cannot be declared invalid on any theory of immunity. McCulloch v. State of Maryland, 4 Wheat. 316, 4 L.Ed. 579. See also 51 Am.Jur., Taxation § 236. Applicants can prevail, if at all, only by reason of the language contained in the Oklahoma Constitution and the Enabling Act, exempting from taxation that property "reserved for its use".

Had it been provided that property *used* by the United States would not be taxable, plaintiffs' theory would probably be correct. But this exemption clause applies only to property *reserved for the use* of the United States. In Gerlach Livestock Corporation v. United States, 76 F.Supp. 87, at page 93, 111 Ct.Cl. 1, the court said:

"The condition of the deed reads, the grantor 'reserves' the right. This word means to keep or retain; that is to say, to keep what one already has. You do not reserve a right which you do not possess."

In United States v. Celestine, 215 U.S. 278, 30 S.Ct. 93, 95, 54 L.Ed. 195, the court in discussing the word "reservation", said:

"The word is used in the land law to describe any body of land, large or small, which Congress has reserved from sale for any purpose. It may be a military reservation, or an Indian reservation, or, indeed, one for any purpose for which Congress has authority to provide."

█ That portion of Sec. 3 of the Enabling Act preceding the provision in ques-

tion provides that the people of Oklahoma disclaim all right and title to any unappropriated public lands "and that until the title to any such public land shall have been extinguished by the United States, the same shall be and remain subject to the jurisdiction, disposal, and control of the United States." It is conceivable that this unappropriated public land over which the United States retained control was the land referred to as being "reserved for its use." It is true that this reservation of unappropriated public land reserved more than a mere right of *use,* and in fact constituted a reservation of title to such lands, but it is again possible that the words "for its use" were intended as merely explanatory of the purposes for which the reservation was made. However, applicants argue that since the government *owned* reserved land, it would be exempt from taxation under the first part of the hereinabove quoted clause which specifically exempts property *owned* by the United States, and that therefore the last part of the clause exempting property "reserved for its use" must have been intended to cover other situations. There is some merit in this argument, and it is possible that such language might have been intended to exempt property thereafter disposed of, but with express reservations of the right to use the same for certain purposes and for certain periods of time. However, we do not deem it necessary to make an unequivocal determination of the exact type and character of the property to which such words refer. We need only decide, and do so decide, that this language is not susceptible to the interpretation which applicants seek to give.it. It is certain that the property involved in this action has not been *reserved* by the Federal Government. It has merely been leased.

In re Noble's Estate, 183 Okl. 148, 80 P.2d 243, it is held in the first paragraph of the syllabus:

"A tax exemption claim cannot be sustained unless it is shown that it comes clearly within the provisions of the law under which the exemption is claimed."

And in Wenner v. Mothersead, 129 Okl. 273, 264 P. 816, it is held in the third paragraph of the syllabus:

"Under the recognized rule of law, property is never exempted from taxation except by a special and definite provision of law."

Had it been the intent of Congress or the framers of our Constitution to exempt property from taxation by reason of mere *use* by the Federal Government, it would have been extremely simple to have so provided.

Affirmed.