**HOME–STAKE PRODUCTION COMPANY, a corporation, Plaintiff in Error,**

**v.**

**BOARD OF EQUALIZATION OF SEMINOLE COUNTY, Oklahoma, Defendant in Error.**

**No. 41467.**

Supreme Court of Oklahoma.

June 14, 1966.

Rehearing Denied July 19, 1966.

Application for Leave to File Second Petition for Rehearing Denied Aug. 2, 1966.

Thomas A. Landrith, Jr., Tulsa, for plaintiff in error.

Albert D. Lynn, E. J. Armstrong, R. O. Ingle, Oklahoma City, for Oklahoma Tax Commission.

Frank H. Seay, County Atty., Bill Biggers, Asst. County Atty., for Board of Equalization, Seminole County, defendant in error.

IRWIN, Justice.

Protestant, Home-Stake Production Company, has appealed from a judgment of the district court, affirming a judgment of the Seminole County Equalization Board assessing taxes upon protestant's personal property located within that county.

Protestant is engaged in the business of production of crude oil by secondary recovery, accomplished by waterflood development. For the taxable year 1963 protestant accepted a nominal assessment upon personal property on hand and paid taxes thereon. Protestant filed no statement of assessment for 1964 upon the ground that all personal property within its warehouses and yards had been purchased, scheduled and committed for use in a projected waterflood drilling program upon specific locations. Protestant's posture was, and is, that no taxes were assessable against such property, since all scheduled property was devoted solely to the waterflood operations. Thus all this property was necessary to and being used in production of oil, and therefore exempt from assessment for ad valorem tax purposes under 68 O.S.Supp. 1965 § 1001(g).

For the taxable year 1964 the county assessor rendered a total amount of $813,128.-60 against personal property inventoried by the assessor. The assessment was for $475,-014.40 against property in Redmond S. D. No. 15, and for $338,114.20 upon property located in Econtuchka S. D. No. 7. Protestant filed written protest against the assessment and valuations fixed by the assessor upon the grounds: (1) the property is exempt under the statute, supra; (2) valuations fixed by the assessor were arbitrary, unreasonable, and in excess of the fair market value and reasonable value of the property assessed.

The Board conducted a hearing (May 27, 1964), and thereafter entered an order reducing the assessments rendered by the county assessor as follows: Redmond S. D. No. 15 reduced to $148,357.00; Econtuchka, S.D. No. 7, $102,573.64. The total amount of protestant's personal property for tax purposes was $250,930.64.

Protestant perfected the statutory appeal (68 O.S.1961, § 15.42) to the district court where the matter was heard de novo. Upon conclusion of the trial the district court entered judgment affirming the determination previously entered by the Board. Motion for new trial was overruled, and this appeal was perfected.

We will consider first protestant's contention that the fair market value of the personal property owned by it in Seminole County on January 1, 1964, was under the evidence introduced, $143,084.65 less than the fair market value as determined by the Board and the trial court on appeal.

We consider it appropriate to review portions of the evidence adduced on trial de novo. Protestant's purchasing agent, whose training and experience covered over 40 years, was in charge of purchasing all materials, was familiar with the fair market value of oil field equipment, and was in charge of appraising value of protestant's inventory. This witness testified as to the nature, requirements and operations of a waterflood project, and that involvement in such an operation required accumulation of necessary materials in a central place for use as needed for the program. Protestant's sole business in Seminole County was the two waterflood projects, one being located in each of the named school district; all property in the Redmond warehouse was purchased and accumulated in that warehouse for use in the pre-scheduled project, or in the necessary oil or water injection wells required for the project; the same was true as to protestant's property at the warehouse or wells in the Econtuchka S. D.

The witness reviewed the Board's schedule of protestant's personal property and the values fixed thereon for tax purposes; testified whether certain property described was owned by protestant, and to the correct description and condition of various items and the fair market value of the items scheduled. The witness testified the fair market value of all personalty involved was $143,084.65 less than the total taxable value fixed by the Board, or had a total value of $107,845.99 for assessment purposes.

The county assessor, in support of the valuations placed upon all items inventoried, testified protestant made no assessment of its property and that he personally inventoried the property assessed; value was fixed by following guide sheets furnished by the Oklahoma Tax Commission and applying the 35% factor to actual value. The assessor also secured competitive prices and mill prices from various supply companies, as well as junk prices from some sources, because protestant refused to furnish any evidence of material costs or inventories as normally is done by other companies. Some of the original valuations were reduced by the Board in an effort to arrive at an assessment figure agreeable to both sides. The assessment procedure was accomplished by attempting to determine fair market value, taking 100% of such figure and applying the 35% factor thereto for assessment purposes. If assessments are not returned by March 15th of the year a 10% penalty is added, and if not made by April 15th a 20% penalty is added. The reduced assessment made by the Board is "within reason of the actual value." The total assessment against protestant, including penalties amounting to $22,811.87, was in line with assessments of other companies.

The assessor's testimony was that he personally surveyed the property in making the assessment and his testimony is substantiated by witnesses who assisted him.

The record discloses that in many instances there was very little difference, if any, between the valuations on specific properties. However, from the above evidence, it is apparent there is a difference of opinion in values.

 This is an action of legal cognizance and this Court has repeatedly held that in such a case, where a jury is waived, the determination of the trial court has the same force and effect as the verdict of a properly instructed jury, if there is any competent evidence to support it. See D.W.L., Inc., v. Goodner-Van Engineering Company, Okl., 373 P.2d 38; and Oklahoma Tax Commission v. Southwestern Bell Telephone Company, Okl., 396 P. 2d 500. There is sufficient competent evidence to sustain the judgment of the trial court on this phase of the case, except as to the electric system, fuel system and gathering systems to be hereinafter considered.

Protestant next contends that all the property owned by it in Seminole County on January 1, 1964, was exempt from ad valorem taxation because it was actually being used in the production of oil and gas within the meaning of Title 68 O.S.Supp. 1965 § 1001(g), which provides:

"No equipment, material or property shall be exempt from the payment of ad valorem tax by reason of the payment of the gross production tax as herein provided except such equipment, machinery, tools, material or property as *is actually necessary and being used and in use* in the production of asphalt or of ores bearing lead, zinc, jack, gold, silver or copper or of petroleum or other crude oil, or other mineral oil or of natural gas and casinghead gas; and it is expressly declared that no ice plants, hospitals, office buildings, garages, residences, gasoline extractions or absorption plants, water systems, fuel systems, rooming houses and other buildings, nor any equipment or material used in connection therewith shall be exempt from ad valorem tax." (emphasis ours)

Protestant argues that all the personal property within its warehouses and warehouse yards was purchased and programmed and scheduled for a specific water development program so that all the ma-

terial is committed by it for use for a specifically scheduled waterflood program on a specific waterflood location and is exempt from ad valorem taxation. Protestant's position is that this is an entirely distinguishable situation from merely storing property and material for convenience for possible use in unspecified unscheduled drilling operations.

The property alluded to in protestant's argument includes all the assessed property such as the buildings, office furniture and fixtures, electric system, water lines, gathering systems; and also warehouse stock, rods, casing, pipes, pumping units, etc, stored in the warehouse and on the warehouse yards. For clarification, we will first consider protestant's argument as the same is applicable to such property as the warehouse stock, rods, casing, pipes, pumping units, etc, which the record discloses were stored within the warehouses and on the warehouse grounds and programmed for the secondary recovery operations.

The law is settled that no claim of tax exemption can be sustained unless it is shown same clearly comes within the provisions of the law under which the exemption is claimed. Baldwin v. Board of Tax-Roll Corrections, Okl., 331 P.2d 412. The Constitution, Art. V § 50, forbids legislative exemption of any property from taxation other than property enumerated under Constitution, Art. X § 6. The Legislature may substitute one form of taxation for another, since there is no positive requirement that property be taxed upon an ad valorem basis. In re Assessment of Chickasha Cotton Oil Co., 80 Okl. 101, 194 P. 215; Wenner v. Mothersead, 129 Okl. 273, 264 P. 816. Neither can the Legislature grant exemptions not recognized by the Constitution, nor enlarge exemptions recognized. County Assessor, etc. v. United Brotherhood of Carpenters & Joiners, etc., 202 Okl. 162, 211 P.2d 790.

In Board of Equalization of Carter County v. Carter Oil Co., 152 Okl. 99, 3 P.2d 816, 77 A.L.R. 1060, we said:

"We consider first the item of the warehouse and its contents consisting of material, equipment, and supplies concentrated therein for the purpose of *being used* in and around the producing oil wells of the Carter Oil Company. This property is not in actual use, but is stored in a central location for convenience and intended for future use in the operation of leases belonging to the company and for the production of oil. This item is not exempt from ad valorem taxation. * * *."

The personal property which protestant claims to be exempt from ad valorem taxation because programmed, scheduled and committed a particular waterflood project is not property exempt under Art. X § 6, supra. Whatever exemption from ad valorem taxation which might be extended to such personalty by virtue of the in lieu tax provided under section 1001(g), supra, must be found clearly within the language of the statute. Nowhere within the language of the statute is an exemption extended to personal property programmed, scheduled or committed for a particular use. The test prescribed by statute is " * * * actually necessary and being used and in use."

The exemption sought to be claimed by protestant does not fall within the requirement that no exemption from taxation can be extended except by special and definite provision of the law. Wenner v. Mothersead, supra. We are of the opinion the fact that personal property is purchased, scheduled and committed for a single purpose (i. e. waterflood) provides no basis for exemption from payment of taxes upon an ad valorem basis.

We therefore hold that *all* the property listed in the assessment list for Redmond S. D. No. 15, *except* the following: 1 dwelling house—$7,000.00; 1 warehouse building—$8,000.00; office furniture and fixtures—$1,000.00; Electric Systems, water lines, gathering systems—$30,000.00; and *all* the property listed in the assessment list for Econtuchka S. D. No. 7, *except* the fol-

lowing: 1 warehouse building—$7,000.00; office furniture, Radio equipment—$1,000.00; and gathering systems—$6,000.00; constitute property which is not exempted from ad valorem taxation under the provisions of 1001 (g) supra, for the reason such property is not "actually necessary and being used and in use in the production" of the minerals involved herein. We therefore affirm the judgment as to all the properties except those properties specifically set forth in this paragraph.

■ We will now consider whether the dwelling house, the 2 warehouses buildings, the office furniture and fixtures, the radio equipment, the electric system, water lines and the 2 gathering systems are exempt from ad valorem taxation under sec. 1001(g), supra. A determination of this issue involves a construction and interpretation of sec. 1001(g).

As originally enacted the gross revenue tax act (R.L.1910 § 7464) laid a tax upon oil and gas mining interests in addition to the prescribed ad valorem tax. In 1915 the Legislature amended § 7464, supra, to provide in part:

"For the purpose of estimating the value of any property rights attached to or inherent in the right to mineral * * * after the same is segregated from the ore in place, and in lieu of any other method of taxing the same and in lieu of any other taxes that might be levied and collected upon an ad valorem basis upon the equipment and machinery in and around any well producing natural gas or petroleum * * * and used in actual operation of such producing well from which a gross production tax is collected as herein provided, * * * every person * * * or corporation engaged in mining or production within this state, of * * * petroleum or other mineral oil or of natural gas, shall * * * file [a statement] showing the location of each * * * oil or gas well * * * the gross amount thereof produced; * * * actual cash value thereof; * * * and shall * * * pay gross production tax * * *."

This act was amended (S.L.1916, Ch. 39 § 1) and became part of § 9814 C.O.S.1921, providing for the gross production tax on oils and minerals. In brief, this section provided payment of the gross production tax was in lieu of all taxes upon petroleum or natural gas and " * * * upon the machinery, appliances and equipment used in and around any well producing petroleum or other crude or mineral oil or natural gas * * * and actually used in the operation of such well or mine; * * *."

The tax so provided under these mentioned statutes was held to be a tax in lieu of all forms of ad valorem taxation, and not violative of the Constitution, Art. V § 50, prohibiting exemption of property from taxation. Large Oil Co. v. Howard, 63 Okl. 143, 163 P. 537; Oklahoma Tax Commission v. Texas Company, 69 S. Ct. 561, 93 L.Ed. 721, 336 U.S. 342; Rhr. Den. 93 L.Ed. 1111.

The years following amendment of the gross production tax act, and by reason of the exemption from ad valorem taxes extended to machinery, appliances and equipment used in and around any well producing crude oil or natural gas, afforded a fertile field of abuse and litigation. Cases dealing with issues whether certain equipment, buildings and other installations in and around producing oil wells were exempt from ad valorem tax upon payment of the gross production tax were numerous. The conclusions reached in particular decisions indicate a diversity of opinion as to the real meaning and intention of the legislative efforts to provide a fair application of an in lieu tax.

In Josey Oil Co. v. Board of Commissioners of Payne County, 107 Okl. 266, 231 P. 272, this Court held the question whether houses built for housing employees upon the lease were a necessary part of the equipment was a question of fact. In Carter Oil Co. v. Osage County et al., 172 Okl. 88, 42 P.2d 496, it was determined that employees' houses and a truck storage garage were a necessary part of the equipment for operations, and exempt from ad valorem taxation. The Josey case and the Osage County case

were promulgated prior to the time the Legislature amended the law and included the language that it is expressly declared that no " * * * office buildings, garages, residences * * * rooming houses and other buildings * * *" shall be exempted from ad valorem taxation.

In Board of Equalization Carter County v. Carter Oil Co., 152 Okl. 99, 3 P.2d 816, 77 A.L.R. 1060, we held that the warehouse and material standing therein was not property "actually used in operation of" the oil well. In re Prairie Oil and Gas Co.'s Omitted Property Assess. List, (1932) 159 Okl. 181, 13 P.2d 580, a water pump station located seven miles from producing wells, and the water line when actually used in operations were exempt. The dissenting opinion to that decision reflects the diversity of reasoning upon the matter.

But nearly contemporaneously the Court, in Board of Equalization of Tulsa County v. Indian Territory Illuminating Oil Co., (1932) 159 Okl. 15, 13 P.2d 585, held that oil storage tanks located a considerable distance from the producing lease were not exempt from taxation. And see Going v. Shaffer, 89 Okl. 46, 213 P. 736, where storage tanks located off the leases but near a railroad to be accessible to loading racks were held not exempt from ad valorem taxation.

The cited cases indicate the divergence of opinion upon the question of what property was to be considered actually used in operation of the producing well. They also reflect the diverse nature of claims asserted in an effort to avoid ad valorem taxation upon materials and equipment. This unquestionably prompted further legislative action in an effort to stabilize the problem. Thus in 1933 the Legislature again amended the gross production tax (S.L.1933, Ch. 103), particularly amending the statute, then C. O.S. § 12434, by inclusion of the following:

"It is hereby declared to be the intention of the Legislature that no equipment, material or property shall be exempt from the payment of ad valorem taxation by reason of the payment of gross production

tax as herein provided, except such equipment, machinery, tools, material or property as is actually necessary and being used and in use in the production of oil, natural gas and/or casinghead gas * * ; and it is hereby expressly declared that no ice plants, hospitals, office buildings, garages, residences, gasoline extraction plants nor any equipment or material used in connection therewith, nor any other similar property not actually necessary and being used and in use in the production of oil, natural gas or casinghead gas * * * shall be exempt from payment of ad valorem taxation."

In 1935 section 12434, supra, again was amended, the principal change being in the amount of gross production tax payable on oil and gas produced, which was raised to five percent of the gross value. Other than for slight changes in phraseology not important here, the only other change wrought by the amendment was the failure to announce any declaration of legislative intention as was included in the 1933 amendment quoted above. However, the 1935 amendment enumerated the identical items expressly declared not to be exempt from ad valorem taxation, but added "absorption plants, water systems, fuel systems, rooming houses and other buildings." The amendment did retain the reference contained in the 1933 Act " * * * nor any equipment or material used in connection therewith shall be exempt from ad valorem taxation."

Comparison of the language of § 1001(g), supra, with the C.O.S.1931 § 12434 as amended by 1933 and 1935 amendments brings the basis of the present problem into focus. Adverting to the 1933 amendment, the legislative declaration of intent made it clear payment of the gross production tax did not exempt any *equipment, material* or *property* from ad valorem taxation " * * * except such equipment, machinery, tools, material or property as is actually necessary and being used and in use in the production of oil, natural gas and/or casinghead gas * * *." Coupled with the declared legislative intention, this language was forcefully defini-

tive of the items which should not be exempt from ad valorem taxation. However, the Legislature went further and enumerated those installations which should not be exempt, including equipment or material used in connection therewith.

The 1935 amendment added absorption plants, water systems, fuel systems, rooming houses and other buildings and equipment or material used in connection therewith. The 1963 codification of the gross production tax code continued use of the language of the 1935 Act, defining those items and installations positively excluded from being exempt from ad valorem taxation, and similar property not actually necessary and being used in production of oil or natural gas. The problem thus is reduced to consideration of whether the statute (§ 1001(g)) in present form intended to make gasoline absorption plants, water and fuel systems, rooming houses and other buildings, and any equipment or material used in connection therewith, taxable on an ad valorem basis; or, whether the Legislature, by addition of other items and installations, merely sought to carry out the previously declared intent by naming the excluded installations theretofore covered by equipment or material used in connection therewith.

Although the record discloses that the assessor in making the assessment on the fuel system, water lines and gathering systems considered that a portion of these installations were actually being used in the production of oil and an allowance was made for such use in the assessment; the Board's position, asserted in its brief and in oral argument, simply is that every installation enumerated in the statute (§ 1001 (g) ) is excluded from ad valorem exemption. We are of the opinion sound reasons appear which preclude acceptance of the Board's argument.

Before discussion of decisive issues, we consider it proper to call attention to the fact that the oil industry's methods of oil recovery have advanced greatly since the first adoption of the "in lieu" theory of taxation upon the gross production of oil and gas. One of the most widely adopted plans for recovery of crude oil, commonly is referred to as "waterflooding", which is defined as: "the deliberate, controlled injection of water into an oil-producing stratum for the purpose of increasing the percentage and rate of recovery of oil from the stratum". Secondary Recovery of Oil in the U. S., A.P.I. (1st Ed.) (1942) p. 48. The first legislative recognition and legalization of this method of oil production was in Pennsylvania in 1921, although the state of New York mentioned "flooding" in a 1919 amendment concerned with plugging of abandoned wells. 5 Summers, Law of Oil & Gas (Perm.Ed.) 344.

The first consideration accorded the problem is this State involved an application to the Oklahoma Corporation Commission, to experiment with water repressuring of a small area in Rogers County. Authority therefor was granted under Order No. 6048, dated December 17, 1932. However, it is recognized in the industry that waterflooding was not a satisfactorily proven method of secondary recovery until 1935. Secondary Recovery of Oil In The U. S., A.P.I., (2nd Ed.) (1950), Ch. 44, p. 545. Not until adoption of House Bill 339, S.L.1945, now 52 O.S.1961 § 286.1 et seq., was there real legislative recognition in this State of this advance in the petroleum industry, and the problems thereby engendered.

The foregoing is of importance in pointing up the fact that waterflooding had not been generally recognized at the date of the 1933 amendment of the gross production tax act. From this it must follow that the items and installations mentioned in the Act as not being exempt from ad valorem taxation, but which at this time concededly are necessary and being used in production of oil by waterflood, reasonably cannot be interpreted as included in the equipment, material and machinery actually necessary and being used, and in use, in waterflood recovery of oil.

The argument is advanced that existing statutes may be amended by the Legis-

lature as it sees fit, which may remove items of property from operation of the gross production tax law and subject same to the general tax laws. As an abstract proposition this is a correct statement of the law. Under Constitution, Art. X § 13, the Legislature is vested with authority to select the subjects of taxation. In re Gross Production Tax of Wolverine Oil Co., 53 Okl. 24, 154 P. 362, L.R.A. 1916F, 141. The question here does not involve the Legislature's right to subject enumerated property to ad valorem taxation, but only whether the statutes removed such property from the exception extended by payment of the gross production tax. Under § 1001(g), supra, equipment, machinery, tools, material or property actually necessary or being used are exempt from ad valorem taxation by the opening language of the section. But, the terms of the closing provision of this statute, under the Board's position, would destroy the exemption extended to water and fuel systems, other buildings and any equipment or material used in connection therewith.

It is elementary that legislative acts are to be construed in such manner as to reconcile the different provisions and render them consistent and harmonious, and give intelligent effect to each. Thus, where parts of a statute reasonably are susceptible of a construction which will give effect to both, without doing violence to either, such construction should be adopted. Bankers Union Life Ins. Co. v. Read, 182 Okl. 103, 77 P.2d 26; Atlantic Refg. Co. v. Oklahoma Tax Comm., Okl., 360 P.2d 826; State ex rel. Rucker v. Tapp, Okl., 380 P.2d 260. In Atlantic, supra, syllabus 4 states:

> "Courts, in construing a statute, may with propriety recur to the history of the time when the act was passed; and this is frequently necessary, in order to ascertain the reason as well as the meaning of particular provisions of the act as the history of the times during which a law was enacted tends strongly to disclose the reasons for the act and therefore the evils sought

to be remedied. And whenever light can be derived from such sources, the courts will take judicial notice of the facts of contemporaneous history, the prior state of the law, the particular abuse or defect which the act was meant to remedy and will then apply the language of the act to such state of affairs."

And in the body of that decision we quoted from the syllabi in Chicago R. I. & P. Ry. Co. v. Gist, 79 Okl. 8, 190 P. 878:

> "Courts, in construing a statute, may with propriety recur to the history of the times when it was passed; and this is frequently necessary in order to ascertain the reason as well as the meaning of particular provisions in it.
>
> "The history of the times during which a law was enacted tends strongly to disclose the reasons for the act, and therefore the evils sought to be remedied.
>
> "Whenever light can be derived from such sources, the courts will take judicial notice of the facts of contemporaneous history, the prior state of the law, the particular abuse or defect which the act was meant to remedy, and will then apply the language of the act to such state of affairs."

In order to give effect to the entire statute, we are of the opinion the exemption from ad valorem taxation, upon payment of the gross production tax, extends to equipment, machinery, tools, material or property actually necessary and being used, and in use, in production of crude oil, natural gas and casinghead gas. We are of the opinion also that legislative inclusion of water systems and fuel systems in the amendment of 1935 was intended to and did refer to such installations which were used in conjunction with ice plants, office buildings, residences, etc., and that there was no intention to remove such items or installations from the exemption against ad valorem taxation when actually necessary and being used and in use in production of oil.

We are convinced of the correctness of this construction for two reasons:

(1) it reconciles the different provisions of § 1001(g), supra, and makes it possible to give effect to all parts of the statute; (2) no large scale waterflood programs were initiated in Oklahoma until after the 1935 amendment of the gross production tax act; the amendment cannot be construed as having been intended to include items and installations at that time not generally accepted in the production of oil and natural gas. The prior state of the law, and the particular abuses which the 1933 and 1935 amendments of the gross production tax were intended to remedy, are facts of contemporaneous history of which this Court will take judicial notice.

 We are of the opinion and hold that the dwelling house, the 2 warehouse buildings, the office furniture and fixtures, and the radio equipment do not constitute property exempted from ad valorem taxation under sec. 1001(g), supra. We therefore affirm the judgment as to these properties. In our determination that the 2 warehouse buildings are not exempted from ad valorem taxation, we do not hold that all buildings are not exempted for under the unambiguous language of sec. 1001(g), if property is actually necessary and being used and in use in the production of oil, such property is exempted. However, a warehouse per se does not meet these requirements.

 In considering whether the electric system, water lines and gathering systems are exempt, we hold such property is exempt from ad valorem taxation under section 1001(g), supra, if it is actually necessary and being used and in use in the production, whether such production be by primary or secondary recovery operations. However, in many instances, the above systems may be devoted to more than one use, i. e., a use that would fall within the purview of section 1001(g), supra, and a use that would not fall within its purview.

In Magnolia Pet. Co. v. State, 175 Okl. 11, 52 P.2d 81, we said:

" * * * Where the same property is devoted to two uses, one of which, if exclusive, would render it taxable on an ad valorem basis, the other of which, if exclusive, would excuse it from that burden under the gross production law, and the different component parts of such property cannot be separately classified according to exclusive use, the value of such property must be allocated for taxation purposes in proportion to its use. See Shaffer Oil & Refining Co. v. County Treasurer of Creek County et al., 175 Okl. 6, 52 P.(2d) 76, this day decided, but not yet reported [in State Reports]. The rule stated is applicable here even though the case was not tried on that theory in the court below, since the question involved is one of public concern. Shaffer Oil & Refining Co. v. County Treasurer of Creek County et al., supra."

 The record discloses that both water flood projects were producing some oil on January 1, 1964, and it also discloses that the assessor in making the assessment considered and determined that the electric system, water lines and the 2 gathering systems were not only being used in the secondary recovery operations for the production of oil but were also used for other purposes. However, the record is not clear as to the use of these properties and the record reflects that the assessor in making the assessment applied a 50% factor instead of the statutory requirement that the property was actually necessary and being used and in use in the production of oil. We therefore must reverse that portion of the judgment with reference to the assessment of $30,000.-00 for the electric system, water lines and gathering system on Redmond No. 15, and the assessment of $6,000.00 for the gathering system on Econtuchka No. 7, and remand the same for further proceedings.

Under the construction and interpretation we have placed on sec. 1001(g), supra, it is unnecessary to consider questions urged on appeal relative to the asserted unconstitutionalty of the act in view of the Constitution, Art. V., Sec. 59.

The judgment is affirmed in all respects except that portion of the judgment relating to the assessment of the electric system, water lines and gathering system in the

928

sum of $30,000.00 on Redmond No. 15, and the assessment of $6,000.00 for the gathering system on Econtuchka No. 7, and to these portions of the judgment the same is reversed and remanded for further proceedings.

Affirmed in part, reversed in part.

SUPPLEMENTAL OPINION ON SECOND PETITION FOR REHEARING

 On Second Petition for Rehearing, Board of Equalization of Seminole County, argues that this Court held in our original opinion that "Gathering Systems" were, or may be exempt from ad valorem taxes. The effect of this argument is that we have extended tax exemptions to properties that have heretofore been subject to ad valorem taxes.

The issue as to what did or did not constitute a "Gathering System" was not before this Court, and by our opinion we did not intend to, nor did we, extend an exemption to "Gathering Systems" that were not heretofore exempt. In other words, this Court did not change or modify our previous holdings and the same statutory test exists now and that is whether the property is actually necessary and being used and in use in the *production* of oil, etc.