**MERCURY MARINE and the Sentry Insurance Company, Petitioners,**

v.

**Ricky D. LUMPKIN and the Workers' Compensation Court, Respondents.**

**No. 83458.**

Court of Appeals of Oklahoma, Division No. 4.

Nov. 29, 1994.

Donald A. Bullard, Chubbuck, Bullard & Hoehner, Oklahoma City, for petitioners.

Arthur H. Adams, Adams, Stanley & Associates, Tulsa, for respondents.

## *OPINION*

GOODMAN, Judge.

This is a review of an order of the Workers' Compensation Court three-judge panel affirming, as modified, an award of permanent partial disability benefits for undisputed work-related injuries to the claimant's neck

and back. The issue is whether the court impermissibly deviated from a court-appointed physician's impairment rating without explaining the reason for the deviation. Based upon our review of the record and the applicable law, we hold that the trial court did err as a matter of law, and vacate the order and remand for further proceedings.

## I

Claimant Ricky Dale Lumpkin was employed by Mercury Marine as a production machinist. He filed a Form 3 June 12, 1991, alleging that he had suffered cumulative trauma injuries during the course of his employment as a result of "[c]onstant lifting, bending and stooping over a 5 year period." In a report dated October 2, 1991, the claimant's medical expert concluded that the claimant had suffered injuries to the neck and back, was in need of further medical treatment, and was therefore temporarily totally disabled beginning November 7, 1990.

The employer denied that the claimant had sustained a work-related injury and presented an October 24, 1991, medical report finding that the claimant had sustained no permanent partial impairment, that his "period of temporary total disability has ended" and that "[h]e is in no further need of medical care."

On October 21, 1992, the court issued a sua sponte order designating a third physician "to determine if claimant is temporarily totally disabled and in need of additional medical treatment to the neck, back, and shoulder; if so, physician is authorized to treat." The court-appointed physician examined the claimant, and recommended keeping him on temporary disability pending review of an upcoming MRI scan.

The court-appointed physician then submitted a report dated January 4, 1993, in which he stated that the claimant "is no longer going to be able to be competitively employed at Mercury Marine." The doctor recommended vocational rehabilitation and found the claimant had sustained permanent partial impairment of 7 percent to the cervical spine and 8 percent to the lumbar spine for a "total impairment rating of 15% whole body impairment according to the AMA Guides." The report was amended March 12, 1993, to note that the claimant "may have nerve root irritation" and to recommend an "epidural steroid injection."

On April 12, 1993, the court entered its order establishing the claimant's entitlement to temporary total disability benefits, and reserving the issue of permanent partial disability. In a "progress report" dated April 26, 1993, the court-appointed physician released the claimant from his care.

A hearing on the claimant's requests for permanent partial disability benefits and vocational rehabilitation was held November 8, 1993. The claimant testified, and submitted a medical report dated September 3, 1993, finding he had sustained permanent partial impairment of 15 percent to the cervical spine, 18 percent to the lumbosacral spine, and 6 percent "at the cervical and lumbosacral levels" for a 39 percent "[t]otal impairment to the whole person."

The employer's medical expert opined that the claimant had sustained work-related permanent partial impairment to the body as a whole of 6 percent to the cervical spine, and 7 percent to the lumbosacral spine.

In an order filed November 19, 1993, the trial court awarded permanent partial disability benefits of 13 percent to the body as a whole for injury to the claimant's neck, and 16 percent to the body as a whole for injury to his back. The employer appealed to a three-judge panel, which modified the amount of tax to be paid by the employer and, in a divided vote, affirmed the award of disability benefits.

The employer seeks review.

## II

██ The employer contends, in this matter of first impression, that the trial court erred as a matter of law because it violated 85 O.S.1991 § 17(D), which provides:

The impairment rating determined by the third physician may be followed by the Court. If the Court *deviates* from the third physician's impairment rating *by more than ten percent (10%)*, the Court shall specifically identify the basis for such deviation in its order. (Emphasis added.) It is the employer's argument that the court-appointed physician combined his ratings of impairment to the two spinal injuries into a whole body impairment rating of 15 percent, and therefore the trial court's award of 29 percent permanent partial disability "was divergent by more than 10% ... without explaining the deviation by separate paragraph in the Order."

■ We agree. The Workers' Compensation Act establishes the exclusive schedule of compensation to be employed in all claims pursued under the Act. 85 O.S.1991 § 22. Medical evidence evaluating the nature and extent of physical impairment must be in substantial compliance with the "latest publication of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment' in effect at the time of the incident for which compensation is sought." 85 O.S. 1991 § 3(11); Workers' Compensation Court Rules 20(D) and 21, 85 O.S.1991, ch. 4, app. The "officially adopted guides shall be the exclusive basis for testimony and conclusions with regard to permanent impairment with the exception of paragraph 3 of Section 22 ... relating to scheduled member injury or loss...." Section 3(11). Scheduled injuries are exclusively governed by the statutory schedule set out in § 22(3), and "may not generally be combined ... with injury to a part of the body subject to the other cases provisions of section 22(3) in permanent partial disability cases." *Special Indemnity Fund v. Choate*, 847 P.2d 796 (Okla.1993).

■ Injuries falling under the "other cases" category of § 22(3), also known as unscheduled injuries, are subject to the evaluation methodologies incorporated in the *Guides* and *must* be computed on the basis the injury inflicts on the body as a whole. *Stoldt Builders, Inc. v. Thomas*, 393 P.2d 875 (Okla.1964). Impairment ratings for injuries under the "other cases" provision are properly combinable in determining the extent of impairment to the body as a whole, *Sears, Roebuck and Co. v. Tatum*, 586 P.2d 734 (Okla.1978), and when "two or more impairments exist, the value of each impairment is determined separately and related to the 'whole person' using the Combined Values Chart" found at pages 246 through 248 of the *Guides'* third edition. *Special Indemnity Fund v. Choate*, 847 P.2d at 808. By way of explanation, the foreword to the *Guides'* third edition states that:

[T]he *Guides* continue to espouse the philosophy that all impairments affect the *whole* person, and therefore, all impairment ratings should be combined to be expressed as impairment of the whole person. This is done with the aid of the familiar "Combined Values Chart." (Emphasis added.)

In *Hughes Drilling Company v. Morgan*, 648 P.2d 32 (Okla.1982), the court was called upon to determine the legislative intent of the statutory phrase "divergent by more than thirty percent" as that phrase was used in 85 O.S.Supp.1977 § 17(A), which stated that the court "shall appoint the third physician" when the medical evidence presented by the parties with respect to permanent impairment "is divergent by more than thirty percent (30%)...." The medical evidence presented in *Hughes* is summarized in the following chart:

| | Lumbar Spine | Left Hip | Left Knee | Right Foot |
| --- | --- | --- | --- | --- |
| Dr. G: | 25% whole man | 14% whole man | 55% to left leg | 20% to right foot |
| Dr. M: | 0% | 0% | 30% to left leg | 0% |

The employer argued that "where multiple injuries occur to various parts of the body, the combined and cummulative [*sic*] disability may be considered in determining whether the divergence is more than 30%." The claimant, on the other hand, contended that

"only the evaluation of the disability to the separate areas of trauma may be considered."

As the chart above illustrates, the *Hughes'* claimant's medical expert found the claimant had suffered injuries to both scheduled and unscheduled members. The court found the "clear legislative intent of the statute" is that "it is the disparity of more than 30% between the comparison of like parts of the body *or* between the evaluation of disability to the body as a whole that is to be considered...." The court held that "since ... the divergence between the doctors' opinions *as to the extent of disability to the body as a whole* exceeded 30%, the first requirement of § 17 was here present." (Emphasis added.)

Thus in comparing the experts' impairment ratings of "like body parts"—the individual scheduled injuries to the knee and to the foot—the court found that the 30 percent evidentiary threshold set out in § 17(A) had not been met. But with respect to the unscheduled injuries to the lumbar spine and left hip, the court found that the experts' impairment ratings diverged by more than 30 percent, thus necessitating appointment of a third physician.

Under the evidence presented in *Hughes*, the § 17(A) divergence could *only* be found to exist if the court first *combined* Dr. G.'s impairment ratings for the two unscheduled injuries into a *single rating* of impairment of

the body as a whole, *and then* compared that result with the employer's medical evidence. Indeed, the court found such a construction to be legislatively mandated.

In construing statues, the intention of the legislature, when ascertained, must govern; to ascertain the intent, all the various provisions of legislative enactments on a particular subject should be construed together and given effect as a whole. *State v. Oakes*, 281 P.2d 749 (Okla.1955). Statutes are to be construed in such a manner as to reconcile the different provisions thereof and render them consistent and harmonious. *Home–Stake Production Co. v. Board of Equalization*, 416 P.2d 917 (Okla.1966).

It is clear to us that the *Hughes* court combined the individual "other cases" injuries into a single rating of impairment to the body as a whole as a preliminary step in determining whether the § 17(A) evidentiary divergence existed.[1] We believe that statutory consistency and harmony dictate that we evaluate the medical evidence under § 17(D) using the same method the *Hughes* court implicitly found to be required under § 17(A).[2]

Applying that approach to the evidence before us, we find that the court-appointed physician's impairment rating of 7 percent to the cervical spine, and 8 percent to the lumbar spine, *when combined using the legisla-*

---

**1.** As the court later stated in *Special Indemnity Fund v. Choate*, 847 P.2d at 808 n. 27, "[i]t is clear the percentages used in the Combined Values Chart of the AMA Guides are required to be expressed in terms of impairment to the whole person." The court went on to note that the 1977 edition of the *Guides* "specifically provides" that "[w]hen two or more impairments are involved, however, the value of each impairment must be ascertained and *transposed to a common denominator, such as the whole man.* Thereafter, *these values must be combined rather than added.* A Combined Values Chart is provided by which any combination of impairments may be easily assessed." Although that particular language did not appear in the 1984 edition used in *Choate*, or the 1989 third edition we use, the *Choate* court apparently considered such language to be instructive because the court noted that a "review of the Charts from both the 1977 and 1984 editions of the AMA Guides reveal no

change has been made in the formula used by the Charts to combine impairments." A similar review here likewise reveals no change has been made between the 1984 and 1989 editions.

**2.** The claimant's reliance on *Trees, Inc. v. Witwer*, No. 81,931 (July 12, 1994), is misplaced. The *Trees* court held that "we construe section 17(D) to allow a deviation of 10 percent plus or minus from the independent, court-appointed doctor's rating and not simply 10 percent *of* the independent doctor's rating." The parties in *Trees*, however, had stipulated to an apportionment of the court-appointed physician's impairment rating between the individual elements of the claimant's spinal injury. More importantly, the issue of the combinability of impairment ratings under the "other cases" provision of § 22(3) was not before the court, and was therefore not discussed.

*tively mandated Combined Values Chart,* results in a whole body impairment rating of 14 percent. Likewise, the trial court's finding of 13 percent permanent partial disability to the body as a whole due to injury to the neck (cervical spine), and 16 percent due to injury to the back (lumbar spine), produces a combined whole body impairment rating of 27 percent. It is thus clear that the court's award impermissibly deviated from the court-appointed physician's impairment rating by more than 10 percent without specifically identifying the basis for the deviation.

We therefore hold that the trial court erred as a matter of law. ORDER VACATED AND CAUSE REMANDED WITH INSTRUCTIONS to modify the award to no more than 24 percent permanent partial disability or specifically explain the basis for exceeding that amount in accordance with the provisions of the AMA *Guides* and § 3(11).

TAYLOR, P.J., and STUBBLEFIELD, J., concur.